## JESSE McCUISTION V. THE STATE.

No. 21827. Delivered February 4, 1942.

The opinion states the case.

*Saunders & Saunders,* of San Antonio, and *McKie & Hill,* of San Marcos, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for swindling, punishment assessed. being two years in the penitentiary.

Appellant and one C. C. Sparks were jointly indicted. Appellant was alone upon trial.

It is averred in the indictment that appellant and Sparks designing and intending to secure from Robert Lee Calhoun a check for $275.00 (which is set out in haec verba), and with the intent to appropriate the check to their own use and benefit, did acquire said check by means of false pretenses and devices and fraudulent representations made by them to Calhoun, and did thereby induce Calhoun to execute and deliver the said check to appellant and Sparks, and obtained and acquired from Calhoun the check in question. The false representations are averred as follows:

" * * * the said C. C. Sparks and Jesse McCuistion did then and there falsely pretend and fraudulently represent to the said Robert Lee Calhoun that the map exhibited and shown by them to said Calhoun had delineated thereon specific directions for locating a cave in Mexico, that said cave contained fabulous

quantities of gold bars, diamonds, pearls and other jewels and treasures, that C. C. Sparks had been to said cave and had seen the gold and other treasures therein contained and which he described, and that C. C. Sparks had removed therefrom large quantities of gold bars, estimated to weigh 1,500 pounds, that after removing said gold bars from the cave C. C. Sparks had again hidden such removed gold on the Southern or Mexican side of the Rio Grande River in Mexico, and that said Sparks had shown and exhibited such gold to said McCuistion, and that said Jesse McCuistion had seen such removed and rehidden gold on the Southern or Mexican side of the Rio Grande River in Mexico; that in consideration of Robert Lee Calhoun's execution and delivery of said check for $275.00 to them, the said C. C. Sparks and Jess McCuistion would undertake to, and would, bring into Texas, and would deliver to Robert Lee Calhoun one-third of the gold and other treasures in the cave and rehidden in Mexico by C. C. Sparks, which one-third would be of the value of not less than one million dollars."

It is further averred in substance that Calhoun believed and relied on said false representations, and was thereby induced to deliver said check to appellant and Sparks, and parted with the "title and possession" thereof; that appellant and Sparks knew the representations and statements were false when they made them:—" * * * for, in truth and in fact, the said map was wholly fictitious and did not show the directions for locating a cave in Mexico containing fabulous quantities of gold bars, diamonds, pearls and other jewels and treasures, and no such cave existed, and C. C. Sparks had not been to any such cave and had not seen the treasure in said cave, as described by him, and the said C. C. Sparks had not removed from the said cave large quantities of gold bars, weighing approximately 1,500 pounds, and the said C. C. Sparks had not again hidden such removed gold weighing approximately 1,500 pounds on the Southern or Mexican side of the Rio Grande River in Mexico, and the said C. C. Sparks had not shown and exhibited to Jesse McCuistion, and the said Jesse McCuistion had not seen, such removed and rehidden gold on the Southern side of the Rio Grande River in Mexico, and said C. C. Sparks and Jesse McCuistion did not intend in return for Robert Lee Calhoun's check for $275.00 above set out to bring into Texas, and deliver to Robert Lee Calhoun one-third of the gold and other treasures in the cave and rehidden in Mexico by C. C. Sparks, which one-third would be of the value of not less than one million dollars; and the said C. C. Sparks and Jesse McCuistion

then and there well knew that each and all of said pretenses, statements, and representations were false, but C. C. Sparks and Jesse McCuistion made said false and fraudulent representations for the purpose of acquiring said check and written instrument, which they did so acquire, against the peace and dignity of the State."

The indictment is attacked in various particulars, none of which is deemed tenable, and only two of which we think necessary to consider. It is urged that some material representations relate to future promises or happenings, and therefore, will not support a prosecution for swindling.

"While a mere false promise to do something in the future is not within the statute, a false promise of future performance, when coupled with a false statement as to a past or existing fact, will support a charge for swindling." 39 Tex. Jur. p. 1058, Sec. 7. Supporting the text are cited Ratcliff v. State, 118 Tex. Cr. R. 616, 38 S. W. (2d) 326; Miter v. State, 100 Tex. Cr. R. 455, 273 S. W. 565; Pickens v. State, 78 Tex. Cr. R. 34, 180 S. W. 234; Boscow v. State, 33 Tex. Cr. R. 390, 26 S. W. 625. The present indictment sets out statements regarding past and existing facts, which, if true, would show the ability of appellant and Sparks to do the thing promised. This criticism of the indictment seems to have been answered by the authorities cited.

The indictment is further attacked on the ground that the averments therein, if true, show appellant to be guilty of theft by false pretext, and therefore, he should have been prosecuted for theft and not for swindling. Appellant invokes Art. 1549 P. C. and the cases construing same to support his contention. Said Article reads as follows:

"Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner as to come within the meaning of theft or some other offense the rules herein prescribed with regard to swindling shall not be understood to take any such case out of the operation of the law which defines any such other offense."

The cases construing said article hold that if the property was obtained in such manner as to come within the meaning of theft or some other offense the prosecution should be for theft or such other offense and not for swindling. See Wither-

spoon v. State, 37 S. W. 433; Hirshfield v. State, 11 Tex. Cr. App. 207; Bink v. State, 50 Tex. Cr. 445, 98 S. W. 863; De-Blanc v. State, 118 Tex. Cr. R. 628, 37 S. W. (2d) 1024; Haley v. State, 127 Tex. Cr. R. 117, 75 S. W. (2d) 272; Lovine v. State, 136 Tex. Cr. R. 32, 122 S. W. (2d) 1069. The case of Sims v. State, 21 Tex. Cr. App. 649, 1 S. W. 465 seems in conflict with Hirshfield (supra), but Witherspoon (supra) followed Hirshfield, and in effect overruled Sims (supra). If appellant is right in his construction of the indictment it follows that his criticism now under consideration should be sustained under the authorities cited. However, we cannot agree with him that the indictment on its face charges theft by false pretext, or shows appellant to be guilty of such offense. In swindling under Art. 1545 P. C. it is only necessary to allege that the property involved was obtained with the intent to appropriate the same to the use and benefit of the party so acquiring it. The indictment in the present case does so aver. Theft by false pretext arises under Art. 1413 P. C., which reads as follows:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, *and the same is so appropriated,* the offense of theft is complete."

It is well settled that a conviction for theft by false pretext may be had under an indictment for ordinary theft. It is also settled that if the pleader attempts by the averments in the indictment to charge theft by false pretext it must not only allege an *intent* to appropriate the property at the time it was acquired, but must also allege that the *property was so appropriated,* and without said latter allegation the indictment is fatally defective. Brown v. State, 95 Tex. Cr. R. 664, 255 S. W. 750; Price v. State, 49 Tex. Cr. R. 131, 91 S. W. 571. There is no allegation in the present indictment either direct or indirect that the check obtained from Calhoun was actually appropriated. We think the failure of appellant to observe the absence of such averment leads him to make the unsupported contention that said indictment on its face showed the offense of theft by false pretext.

It is the further contention of appellant that the facts bring

the case under theft by false pretext, and therefore, by reason of the provisions of Art. 1549 P. C.—heretofore set out—the conviction for swindling should not be permitted to stand.

It may be stated here without reciting evidence that the record shows the State supported every material allegation contained in the indictment. This appears not only from the testimony of Calhoun, but from the confession of appellant, and from the testimony of Sparks who had already entered his plea of guilty to the indictment.

By the representations of appellant and Sparks they induced Calhoun to execute and deliver to them a check intended to be for $275.00. Said check was written by appellant and was by mistake made for $200.75. At Sparks' suggestion it was made payable to appellant. Appellant and Sparks made an unsuccessful effort to cash this check at a store. When they presented the check for payment at the First National Bank of San Marcos—the bank on which the check was drawn—an officer of the bank told appellant and Sparks they could pay on the check only $200.75. Appellant told the bank official that the check should have been for $275.00, and the officer prepared a proper check for that amount, which they were to have Calhoun sign. They returned to Calhoun's house, told him of the mistake about the check, delivered the first check to him, and he signed the check which had been prepared by the officer of the bank and turned it over to appellant and Sparks. The last check was also payable to appellant, and is the check declared on and described in the indictment. Appellant and Sparks never made any effort to cash this check, but took it back to the bank. Before it was presented at the bank for payment appellant called an old friend aside and intimated to him that there was some trouble about money in the bank, and requested the friend to get in touch with officers and have them come to the bank. Before the officers reached the bank appellant and Sparks had gone to a garage regarding some repairs or adjustments to their car. The officers found them at the garage and arrested both of them and took the check in question from appellant. Appellant's explanation for sending for the officers was that he had become convinced he was mixed up in a crooked deal and wanted to go no further with it. The record is replete with unquestioned evidence that he knew the deal was crooked from its inception. But whatever the real reason may have been that prompted appellant to send for the officers, the fact re-

mains that the check declared on was never presented to the bank for payment.

If the facts show that the check in question was actually appropriated by appellant and his companion, then under Art. 1549 P. C., and the authorities heretofore cited, this case would be one of theft by false pretext, and the prosecution should have been for that offense, and it would follow that the conviction for swindling should not stand.

Many cases are found reported in which checks have been involved, but in each of the cases the opinion shows that the check was either cashed or deposited in the bank to the credit of the holder. After a diligent search we have discovered no authority dealing with a situation as here found. It is made clear from the record that the intent of the parties when they obtained the check was to appropriate it to their own use and benefit. Such intent would suffice to make the case one of swindling if other elements of that offense were present. Not so in theft by false pretext, where there must be an actual appropriation. The mere conceiving or intent to do a fraudulent act is not a fraudulent appropriation. There must be not only the fraudulent intent or conception, but a fraudulent act in accordance with and carrying out the fraudulent intent. *There must be a combination of intent and act showing that the intent has been achieved.* Pickrell v. State, 60 Tex. Cr. R. 572. The mere delivery of the check to appellant and his companion in no way affected the funds in the bank to the credit of Calhoun. "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Art. 5947, Sec. 189, Vernon's Tex. Civil Statutes. The check in question never having been paid by the bank, or accepted or certified, the funds of Calhoun remained undisturbed, and no benefit accrued to appellant and his companion. If the check had been negotiated, or had been used in such manner that some benefit resulted to appellant and his companion therefor the fact of ultimate appropriation would have appeared. Unlike most personal property which may be used to the benefit of its holder in its initial form, a check seems to present an exception. As long as a check is carried around in the payee's pocket, it is difficult to see how such use could ever be to the payee's benefit, or that it could be said to have been actually appropriated to his

use and benefit. We quote the following general observation regarding the appropriation or conversion of property.

"There is no settled mode in which this appropriation must take place. It may occur in any of the numberless methods which may suggest themselves to the particular individual; in other words, it may be consummated in any manner capable of effecting it." 16 Tex. Jur. p. 376, Sec. 37.

Not intending to lay down any hard and fast rule as to what particular thing may constitute an actual appropriation of a check to one's own use and benefit, it seems logical to say that no such appropriation has been consummated until the check has been transferred or so used as results in benefit to its holder.

Believing the facts here present do not show such subsequent appropriation of the check as brings the case within theft by false pretext, the contention of appellant that the case is for the latter offense is held untenable.

The judgment of conviction for swindling is therefore affirmed.