GRADY WHITEHEAD v. THE STATE.

No. 22998. Delivered January 17, 1945.
Rehearing Denied March 7, 1945.

The opinion states the case.

*H. R. Bishop* of Fort Worth (and *Dave Tant* of Oklahoma City on motion for rehearing) for appellant.

*Alfred M. Clyde*, Criminal District Attorney, *W. E. Myres, W. R. Parker*, and *J. Elwood Winters*, Assistant Criminal District Attorneys, all of Fort Worth, and *Ernest S. Goens*, State's Attorney of Austin, for the State.

*B. Y. Cummings*, of Fort Worth, amicus curiae.

KRUEGER, Judge.

The offense is theft of property over the value of fifty dollars. The punishment assessed is confinement in the state penitentiary for a term of five years.

Appellant's first complaint relates to the court's action in overruling his application for a severance to first try O. J. Fletcher, who was then under indictment for an offense of like nature growing out of the same transaction as that for which the appellant was indicted. The record shows that O. J. Fletcher was not in attendance at court; that he had not been arrested but was supposed to be in the State of Oklahoma. Under the facts, as reflected by the record, a severance as prayed for would have caused a continuance of the case. Hence the court properly overruled the application. See Art. 651, C. C. P., which provides, among other things, as follows:

"Such affidavit shall not, without other sufficient cause, operate as a continuance to either party."

See Crane v. State, 91 Tex. Cr. R. 304; Moore v. State, 96 Tex. Cr. R. 262; Stouard v. State, 27 Tex. Cr. App. 1; Sapp v. State, 87 Tex. Cr. R. 606.

His next contention is that the evidence is insufficient to justify and sustain his conviction. After a careful reading of the statement of facts, we have reached an adverse conclusion.

The evidence adduced by the State, briefly stated, shows that a few days prior to the commission of the alleged offense J. P. Hitri, the injured party, was introduced to A. H. Danley by one, Spec Montgomery. Danley accompanied Hitri to his place of business and while there, told him that he had a friend who was a good business man and who was employed by a major oil company, and that he would like for Hitri to meet him. On the following day, Danley appeared at Hitri's place of business with one, O. J. Fletcher, whom he introduced to Hitri. Fletcher immediately began to tell Hitri that he (Fletcher) was a purchasing agent for a major oil company and had made millions of

dollars for the company; that he now desired to make some money for himself; that he needed some one with money to help him. He then unfolded his scheme to Hitri by telling him that when the company directed him to acquire an oil, gas and mineral lease on a certain tract of land and gave him eight or ten thousand dollars to pay for it, he wanted someone with money to buy it at a less amount and that he (Fletcher) would buy it for the company for the amount which the company had agreed to pay for the lease; and that the profit would then be divided between them. Hitri told him that this did not seem right, that it appeared to be fraudulent, whereupon Fletcher apparently became irked and remarked that there was nothing wrong in it because the company was getting the lease for the price it had agreed to pay for it. On the day following this conversation, Danley and Fletcher again saw Hitri and told him that the company had brought in an oil well in Wise County; that no one knew it; that the company was keeping it a secret until it could obtain leases on the adjacent lands; that they knew a man some distance out in the country from Fort Worth who had a lease on 160 acres of land in Wise County adjacent to the tract on which the well was located. They invited Hitri to get into an automobile with them, drive out there and buy the lease. Fletcher showed him an assignment of a lease on 160 acres of land located in Wise County to which was attached a check in the sum of $8,000.00, which appeared to have been drawn by the Sinclair Oil Company. Hitri got into the automobile with them and they drove out to the appellant's home. Fletcher inquired of appellant if he desired to sell the oil, gas and mineral lease which he had on a 160-acre tract of land in Wise County. Appellant replied that he didn't know; that he had paid $5,-000,00 for it but could use the money, whereupon Fletcher asked him if he would take $4,500.00, to which appellant replied that he would. Thereupon Fletcher asked Hitri to give him a check in said amount, but Hitri did not have a blank check with him. Appellant then went into his house and brought out a blank check on the Continental National Bank. Hitri struck out the words, "Continental National Bank" and inserted above them the words, "Fort Worth National Bank" and then made out the check, in the sum of $4,500.00, payable to appellant. Appellant handed Hitri a written assignment of the lease. The check was cashed a day or two later and the proceeds thereof divided among Danley, Fletcher, appellant, and another party not named by appellant. After the deal was consummated, Fletcher never came back to buy the lease for the oil company. They had "fleeced the lamb" and had no further interest in him. Hitri became suspicious and went to Mr. Walter Scott, a prominent attorney in

Fort Worth, with a view of having him recover his money. Hitri had been before the grand jury and told his tale of woe. Appellant, Danley and Fletcher had obtained some information of Hitri's appearance before the grand jury. They met him at Mr. Scott's office, where they stated that if he (Hitri) would withdraw his complaint, they would repay him, but the money was never repaid. That appellant had paid $5,000.00 for the lease was not true. He had paid only $320.00 for it. That there was an oil well near the land described in the lease or one being drilled was also untrue. That Fletcher was an agent of the Sinclair Oil Company was untrue because there was not any corporation by the name of Sinclair Oil Company doing business in Texas. There was a company by the name of Sinclair-Prairie Oil Company operating in Texas, but O. J. Fletcher was not employed by it. That the Sinclair Oil Company had issued a check in the sum of $8,000.00 and handed it to Fletcher with instructions to purchase the lease from appellant was false. Fletcher's statement to Hitri that he would buy the oil lease from him for the company and divide the profit between them was also untrue.

Appellant did not testify. He called his son as a witness, who testified that about the first day of October, some twenty-five days prior to the commission of the alleged offense Spec Montgomery came to their home and stated that he was interested in buying a lease in Wise County; that appellant told him that he was willing to sell him a lease on 160 acres in said county; that Montgomery agreed to pay eight dollars per acre for it and in fact paid $200.00 to the appellant. There was no one with Montgomery at the time but he came alone.

Appellant introduced a number of witnesses. One of them resided in Oklahoma and testified by deposition that he owned a lease in the State of Oklahoma which he sold to one Johnson with the aid of Spec Montgomery. Another witness testified that he witnessed the signing of the transfer of the lease in question by the appellant to Hitri but did not see any check pass between them. Another witness testified for appellant that on the 27th or 28th day of October, Spec Montgomery came to him with the check in question and asked him to cash it; that he told him that he did not have that much money but that he would get it cashed for him the next day.

It occurs to us that anyone who reads the facts in this case could not logically reach any other conclusion than that a conspiracy existed among Fletcher, appellant and others to cheat

and defraud the injured party. We deem the evidence ample to sustain the jury's conclusion of the appellant's guilt.

Appellant next contends that the facts of this case are such that if he is guilty of any offense, it is swindling and not theft by false pretext, because Hitri, the injured party, intended to part, and did part, with the title and possession of the check. Such is not the sole distinction between the two offenses. To constitute swindling, the false representation must relate to some past or present fact or facts and not to some act to be performed in the future. If it be conceded that Hitri parted with the title and possession of the check, yet, it must be borne in mind that he did so upon the representation of Fletcher that two days later he (Fletcher) would buy the lease from him for the Sinclair Oil Company for $8,000.00. This was clearly a promise of an act to be performed at some future date. That appellant, Danley, Fletcher and others had formed an unholy alliance for the purpose of obtaining Hitri's money by and through false representations is sufficiently shown by appellant's statement to the effect that the money was divided among four persons, and that Danley, Fletcher, appellant and another party each received $942.00 out of the proceeds of the check which Hitri had delivered to the appellant after paying some expenses incurred in promoting and completing the object of their alliance. In support of what we have said here, we refer to the following cases: DeBlanc v. State, 118 Tex. Cr. R. 628; Sherman v. State, 62 S. W. (2d) 146; Barnett v. State, 43 S. W. (2d) 449; Contreras v. State, 118 Tex. Cr. R. 626, 39 S. W. (2d) 62. However, since the 48th Legislature, in 1943, amended Article 1549, P. C., by the enactment of Chapter 240. (Reg. Session, p. 362), the State might have proceeded with the prosecution for either the offense of swindling or theft by false pretext. The article referred to reads as follows:

"Where property, money, or other articles of value enumerated in the definition of swindling, are obtained in such manner that the acquisition thereof constitutes both swindling and some other offense, the party thus offending shall be amendable to prosecution at the state's election for swindling or for such other offense committed by him by the unlawful acquisition of said property in such manner."

Appellant also complains of the testimony given by Hitri as to what Danley and Fletcher told him in the absence of appellant before he purchased the lease from appellant. This testimony was admissible even though appellant may have entered the conspiracy subsequent thereto, because every act done by

each of the other conspirators before his entry or afterwards, in pursuance of the common design until its final consummation, is the act of the appellant. See Stevens v. State, 42 Tex. Cr. R. 154; Sapp v. State, 87 Tex. Cr. R. 606; Johnson v. State, 128 Tex. Cr. R. 12 (19). The rule is well settled in this state that the acts or declarations of one co-conspirator made prior to or during the pendency of the conspiracy and before its final consummation, even though made out of the presence or hearing of the others, are admissible in evidence against the accused. See Hamilton v. State, 165 S. W. (2d) 737, and authorities there cited.

The rule that the conspiracy must be established before the declarations of co-conspirators are admissible against the accused no longer obtains in this state; nor does the order in which the evidence showing the conspiracy is admitted affect its admissibility. See Sapp v. State, 87 Tex. Cr. R. 617, and authorities there cited.

Bill of Exception No. 4 complaining of the introduction in evidence of the check which Hitri gave to the appellant on the ground of variance between the allegation in the indictment and the check because the words, "Continental National Bank" had been stricken out and the words, "Fort Worth National Bank" inserted in lieu thereof prior to the time it was delivered to the appellant, is without merit. The words stricken out were no part of the check.

Bill No. 5 complains of the testimony given by Hitri as to what Fletcher said to him on the way back to the city of Fort Worth from appellant's home after the check had been delivered to the appellant. He objected thereto on the ground that it was made in the absence of the appellant; that anything Fletcher may have said occurred after the object of the conspiracy had been consummated and it had ended. As we view the record, the conspiracy had not ended. Appellant had not cashed the check and the proceeds of the check had not been divided among the conspirators. In 18 Tex. Jur. p. 221, sec. 127, the rule is stated as follows:

"When a conspiracy discloses an intention to divide stolen property evidence of acts or declarations at any time before the division is admissible upon the theory that the conspiracy does not end until that time."

See Robins v. State, 134 Tex. Cr. R. 617; Miller v. State, 88 Tex. Cr. R. 157, (in fact p. 159).

What we have said with reference to Bill No. 5 applies to Bills Nos. 6 and 7 inasmuch as they fail to show that the loot had been divided among the co-conspirators when the statements were made. Until it is done, the conspiracy has not ended, and any statement, word or act by one or either of the co-conspirators is admissible in evidence against the one on trial.

Bill No. 8 complains of the court's action in declining to sustain his motion for an instruction to the jury to return a verdict of not guilty. There is no merit in this bill. There is ample evidence upon which the jury could reasonably base their conclusion of the appellant's guilt.

Finding no reversible error in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION FOR REHEARING.

DAVIDSON, Judge.

Appellant insists that the facts are insufficient to warrant either the trial court's or the jury's conclusion that a conspiracy existed between Fletcher, Danley, and himself, so as to authorize the introduction in evidence against him of the acts and declarations of Fletcher and Danley, made out of his presence and hearing, upon the theory that a conspiracy existed between them.

A conspiracy is deemed to be shown when there is some evidence of participation or interest in the commission of the crime apart from the testimony of the alleged conspirators; also that the mere identification of the defendant and another as joint participants is sufficient evidence of the conspiracy. 18 Tex. Jur., p. 213, sec. 122.

Viewing the facts here presented in the light of these rules, we note that, outside of and other than the acts and declaration of Fletcher or Danley, appellant was shown to be an active participant in the unlawful enterprise by being the man who assigned the lease and received the check in payment thereof from the injured party, and thereafter participated in the proceeds derived from the check.

We have no difficulty, then, in reaching the conclusion that

such facts are sufficient to authorize the jury to conclude that the appellant was an active participant and was acting jointly with Fletcher and Danley in their common design to steal the check and that a conspiracy was shown to exist between said parties.

Appellant argues with much vigor that a conviction of theft by false pretext cannot be sustained under an indictment charging theft by fraudulent taking or ordinary theft.

To agree with this contention would be to overrule a long line of authorities in this State announcing a contrary rule, such as: Hawkins v. State, 58 Tex. Cr. R. 407, 126 S. W. 268; McWhorter v. State, 125 Tex. Cr. R. 71, 65 S. W. (2d) 1101; Riggs v. State, 125 Tex. Cr. R. 647, 70 S. W. (2d) 164; McCuistion v. State, 143 Tex. Cr. R. 283, 158 S. W. (2d) 527; McClain v. State, 143 Tex. Cr. R. 521, 158 S. W. (2d) 796.

We are unwilling to overrule these cases.

At appellant's insistence, the facts as a whole have been again reviewed and we remain convinced that they are sufficient to authorize the jury's conclusion of guilt.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.