PAUL V. WADE V. STATE

No. 27,356. February 9, 1955.
Rehearing Denied (Without Written Opinion)
March 9, 1955.

*J. P. Darrouzet,* Austin, for appellant.

*Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Presiding Judge.

The offense is felony theft; the punishment, 5 years. The indictment charged the theft of an outboard motor, an automobile wheel and tire.

One Smith, the injured party, while at a bar, fell in among questionable drinking acquaintances, one of whom was the ap-

pellant. The parties left the bar and repaired to appellant's home, where their libations continued. The appellant secured Smith's consent to use his automobile for the purpose of fetching his lady friend; he returned to the house with her, where she remained for a time; the appellant then again secured Smith's permission to use his automobile, but this time did not return. Smith's wife retrieved her erring husband about midnight, and the police returned his automobile early the next morning. Smith discovered that an outboard motor, his spare wheel and tire, a shower curtain and certain towelling which had been in the turtle of his automobile were missing.

Smith testified that he did not give the appellant his consent to take the missing items.

It was shown that the appellant pawned the outboard motor at one place, and the wheel and tire at another, after he left in Smith's automobile the second time.

The appellant was arrested some weeks later in Seguin.

Appellant did not testify in his own behalf but offered the testimony of his mother, who stated that Smith had instructed her son to borrow some money on what he had in the automobile for the purpose of buying more whiskey. She does not state, however, that the appellant ever returned with any whiskey.

The jury resolved this disputed issue of fact against the appellant.

The only serious question presented is appellant's contention that the facts show conversion by bailee rather than theft by false pretext, as found by the jury. In order to answer the question, further facts need be cited.

Appellant's lady friend, who had lost her affection for him by the time of the trial, testified that the appellant came for her in a Dodge automobile late in the afternoon on the day in question and that on their way to the appellant's house he tried to sell "some towels and bathroom set" to one Shorty but was unable to do so, that when they arrived at appellant's home Smith and others were there, and that after a visit with those assembled she and appellant left again in Smith's car. It is important to note that she testified, "Before we left the house, Paul (the appellant) told me he was going down to sell the motor." She testified that she never saw the motor in question but that

she was present with the appellant when he made inquiries of several people as to a prospective buyer of a "hot motor" and that she left his company before he actually disposed of the same.

We have concluded that the jury was authorized to find from this evidence that at the time the appellant asked for and secured Smith's permission to use the automobile the second time he had at that time formed the intention of converting to his own use the items charged in the indictment.

One bill of exception relates to a question propounded to appellant's mother. We quote the objection interposed: "We will object to that question without stating any reason." Whatever may have prompted appellant's counsel to so phrase his objection, we hold it to be no objection at all because it not only pointed out no grounds to the trial court but also left the impression that he had grounds but was declining to supply them to the trial court.

Finding no reversible error, the judgment of the trial court is affirmed.

DAVIDSON, Judge, dissenting.

My brethren hold the facts sufficient to show that appellant committed the crime of theft by false pretext. To this conclusion I cannot agree.

I dissent for two reasons: The first is an abiding conviction that no man should be condemned to penal servitude until the state has proven him guilty. This the state has not here done, and if this appellant goes to the penitentiary under this record it will be without his guilt having been established in accordance with law. The second reason is my conclusion that the majority opinion overrules, without justification or reason, a long line of established precedents and, in so doing, leaves the law relative to theft by false pretext under Art. 1413, Vernon's P.C., and theft by conversion by bailee in a state of confusion and uncertainty.

The indictment charged felony theft, under Art. 1410, Vernon's P.C., of an outboard motor and one automobile tire and one automobile wheel, of the aggregate value of over $50, belonging to Peter Smith.

The case was tried and submitted to the jury upon the theory of false pretext, under Art. 1413, Vernon's P.C., which article reads as follows:

"The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete."

Appellant insists that the facts are insufficient to sustain the conviction. In that connection, it is suggested that if he is shown to be guilty of any offense it is that of theft by conversion by bailee, under Art. 1429, Vernon's P.C., which article reads as follows:

"Any person having possession of personal property of another by virtue of a contract of hiring or borrowing, or other bailment, who shall without the consent of the owner, fraudulently convert such property to his own use with intent to deprive the owner of the value of the same, shall be guilty of theft, and shall be punished as for theft of like property."

There is a pronounced difference in the two offenses. As to these offenses, certain legal principles are well fixed. In theft by false pretext, the property must come into the possession of the accused by some character of false pretense or representation upon his part to the owner. Hesbrook v. State, 149 Texas Cr. Rep. 314, 194 S.W. 2d 262; Williams v. State, 152 Texas Cr. Rep. 233, 211 S.W. 2d 951. There is no such requirement in theft by bailee.

Another constituent element of theft by false pretext is that at the time the possession of the property is obtained there must exist the intent to steal it. Authorities attesting the rule will be found under Note 2 of Art. 1413, Vernon's P.C. See, also, 41 Texas Jur., Theft, Sec. 46, p. 68; Flagg v. State, 51 Texas Cr. Rep. 602, 103 S.W. 855; Bunch v. State, 81 Texas Cr. Rep. 171, 194 S.W. 144; Nichols v. State, 133 Texas Cr. Rep. 294, 109 S.W. 2d 1057.

The rule just stated is a distinguishing factor in determining when facts show theft by false pretext or theft by conversion by

bailee. In Lewis v. State, 48 Texas Cr. Rep. 309, 87 S.W. 831, it is said:

" . . . the distinction between the offenses being that under Article 861 (now Art. 1413) the fraudulent intent must exist at the very time of obtaining possession of the property, while under Article 877 (now Art. 1429, Vernon's P.C.) it is not necessary that the fraudulent intent should have existed at the time the possession of the property was obtained, but may be formed afterwards."

That rule has been followed. Alvarez v. State, 109 Texas Cr. Rep. 62, 2 S.W. 2d 849; Riggs v. State, 125 Texas Cr. Rep. 647, 70 S.W. 2d 164; McCain v. State, 143 Texas Cr. Rep. 521, 158 S.W. 2d 796.

It is in the light of these rules that the facts must be appraised in order to determine if they show theft by false pretext, or theft by conversion by bailee.

Here are the facts, as I understand them:

About 2 o'clock on the afternoon of March 15, 1954, the injured party, Peter Smith, met the appellant, whom he had not known prior thereto, at a bar or beer tavern. At that time, appellant suggested that they go out to his mother's house. Smith agreed and the two left the tavern in Smith's Dodge automobile. They went to the home of appellant's mother and it appears the drinking continued. After being at the house for about thirty minutes, appellant asked Smith to loan him or grant him permission to use his car so that he might go get "his girl." Smith readily agreed to such request, and appellant left in the car, returning in about forty-five minutes with his girl friend in the car with him. Some twenty minutes later, appellant asked Smith if he might use the automobile to take the girl home. Smith granted the request and appellant and the girl left in the car.

About 10:00 o'clock that night, the officers called Smith at the home of appellant's mother, where he had remained, advising him that they had "picked up" appellant for speeding and inquiring if he (Smith) had loaned appellant his automobile. Smith replied that he had, and asked the officers to bring him his car. This the officers declined to do, inasmuch as he had loaned it to appellant.

Some time thereafter, appellant called Smith and told him he was going to bring the car to him. This the appellant failed to do.

Smith remained at the home of appellant's mother until about 2:00 o'clock that night, when his wife came for him.

When Smith turned over his automobile to appellant, there were locked in the trunk thereof one outboard motor, an extra tire and wheel, and a bath set and shower curtain. The key to the trunk was on the key ring upon which was also the key to the ignition switch to the automobile. Smith did not acquaint appellant with the fact that this property was in the trunk of the car when he let him have the car.

A short time thereafter, Smith recovered his car. The outboard motor, tire, wheel, and bath set and curtain were missing therefrom.

Subsequent developments showed that somewhere between 9:30 and 10:00 o'clock of the night in question, appellant went to a filling station operated by Schroyer, who testified: "he (appellant) told me that he was broke and he wanted to leave an outboard motor with me for $20.00 until the next evening . . . He was supposed to come back and redeem the motor the evening of the 16th. . . ."

The outboard motor left by appellant was subsequently identified as belonging to Smith and as having been in the trunk of the car when Smith let appellant have the automobile.

Hough, the operator of another filling station, testified that on the night in question, appellant came to his station driving a Dodge automobile and represented that "he was out of gas and he said he did not get paid until next day and he wanted to leave a spare tire until he got paid and he would come back first thing in the morning and pick up the tire and give back the $3.00. He wanted $3.00 worth of gas. He left the tire with me and it was mounted on a rim and I gave him $3.00 worth of gas in return."

The wheel and tire mentioned were subsequently identified as the property of Smith and as being in the trunk of the car when Smith let appellant have the car.

The foregoing comprises a statement of the facts upon which this conviction rests.

Appellant did not testify.

Summarized, the facts show:

Appellant came into possession of the automobile and its contents lawfully, with the full knowledge and consent of the owner. No pretext or representation of any character was made by which possession of the automobile was obtained. There is an absence of any testimony suggesting that at the time appellant obtained possession thereof he knew or was made acquainted with the fact that the motor, wheel, and tire were then in the trunk of the car. Knowledge of such fact was acquired only after the automobile came into appellant's possession. Not knowing that the property was in the trunk of the automobile, appellant could not have entertained the intent to steal it when he came into possession of the automobile. Any intent to steal the property arose, of necessity, after the possession of the automobile had been obtained.

The conclusion is inescapable that appellant did not and could not have entertaintd the intent to steal the motor, wheel, and tire when he obtained possession thereof and that he could not be guilty, therefore, of the theft of said property by false pretext.

It is equally apparent that the facts show the commission of the offense of theft by conversion by bailee, because appellant came into the possession of the automobile and, thereby, the constructive possession of the stolen property under a contract of borrowing the automobile, in the trunk of which he thereafter discovered the property and made up his mind to steal and did steal that property. Such facts show every element necessary to constitute theft by conversion by bailee. Lopez v. State, 37 Texas Cr. Rep. 649, 40 S.W. 972; Webb v. State, 99 Texas Cr. Rep. 392, 269 S.W. 437.

As I view this record, the facts do not authorize appellant's conviction for theft by false pretext, but do show theft by conversion by bailee.

It must be remembered that a conviction of theft by conversion by bailee cannot be sustained under an indictment charging, as here, theft under the general theft statute, but in order to convict of theft by conversion by bailee the indictment must so charge. McWhorter v. State, 125 Texas Cr. R. 71, 65 S.W. 2d 1101; Callahan v. State, 149 Texas Cr. Rep. 143, 192 S.W. 2d 562.

In supporting their conclusion, my brethren do so upon the testimony of appellant's lady friend wherein they find that she testified to facts showing appellant knew of the existence of the stolen property in the trunk of the car at the time he borrowed or came into possession of the automobile.

By her own admission, the witness was present and aided appellant in the commission of the crime and received and converted to her own use some of the stolen property. She was therefore an accomplice witness, as a matter of law.

There is no corroboration of the incriminatory testimony of the witness against the appellant. That one may not and can not be convicted upon the uncorroborated testimony of an accomplice is fundamental.

It is my firm conviction that the opinion of my brethren not only upsets the settled law that has been in force and recognized in this state for many years but, in addition, leaves the law in such an unsettled and confused condition that no one knows, now, whether facts show theft by false pretext or theft by conversion by bailee. This should not be. The two offenses are separate and distinct, and controlled by separate and distinct statutes.