**Tom Henry HOGAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 38194.

Court of Criminal Appeals of Texas.

June 2, 1965.

Rehearing Denied Oct. 13, 1965.

J. W. Reid (on appeal only), Abilene, Clay Coggins, Roby, for appellant.

Weldon Kirk, Dist. Atty., Sweetwater, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is cattle theft; the punishment, two years.

The indictment, omitting the formal parts, charged that appellant did unlawfully and fraudulently "take one cattle, the same then and there being the corporeal personal property of and belonging to John Dale Kitchens, from the possession of Lon Rogers, employee of Richard Young, who, as said employee, was holding same for said John Dale Kitchens, without the consent of said John Dale Kitchens, and without the consent of said Richard Young, and without the consent of said Lon Rogers, and with the intent then and there to deprive

the owner thereof of the value thereof, and to appropriate it to the use and benefit of him, the said Tom Henry Hogan."

The state's evidence shows that in the month of October, 1963, a stray black Brangus steer calf belonging to John Dale Kitchens came to the Richard Young place, located some twelve miles east of Roby in Fisher County. The calf was penned and an effort was made to locate the owner. Appellant lived across the road from the Young place and Mr. Young told his employee, Lon Rogers, to ask appellant if he had lost a calf. When contacted by Rogers, appellant said he would come look at the calf. On October 30, appellant came to the Young place and, after looking at the calf, claimed the animal, saying "he thought it was his." Rogers helped appellant load the calf in a trailer and appellant left with the animal. Appellant then took the calf to an auction sale at Stamford, where he sold it for $80.03, using the name of Jack Logan, address: Stamford, Texas, as seller. A check in such amount was issued by the Stamford Livestock and Commission Company, payable to Jack Logan. The calf was later located at the Johnny Hines' place in Stonewall County, where it had been taken by Mr. Hines, who purchased the animal at the auction sale in Stamford. The witness Rogers testified that he would not have turned the calf over to appellant if he had not thought he was the owner and that if appellant had not claimed the calf he would not have thought he was the owner.

It was further shown that in the investigation of the loss of the calf, Inspector Boots O'Neal, of the Texas and Southwestern Cattle Raisers Association, talked to appellant about the calf in the early days of November, 1963. Inspector O'Neal testified, without objection, that appellant was very cooperative and said that he had picked up a calf from the Young place and that they could go to his place, where the calf was in the pasture. The two proceeded to appellant's place, where appellant showed the inspector where he had unloaded the calf, but the calf could not be found in the pasture. After the calf could not be found, appellant admitted that he had sold it at the auction in Stamford on the day he loaded it at the Young place. When confronted with the fact that there was no record of any sale to him, appellant admitted that he used the assumed name of Logan when he discovered the calf was not his after he arrived at the auction.

John Dale Kitchens, the owner of the calf, testified that he talked to appellant on three occasions about the missing animal. On the first occasion, appellant stated that he had no stray cattle. Later, appellant told the witness he had picked up the calf from the Young place but stated he had not been to the auction sale. Later, appellant admitted to the witness that he, under the name of Logan, had sold the calf. Appellant stated to Kitchens that after he took the calf to the sale and it was going through the ring he noticed it had been castrated, that he got scared and did not know whether it was his calf or not. Kitchens testified that appellant admitted to him that he stole the calf, offered to pay for it, and did give him a check for $82.03 in payment for the calf. The witness further swore that he did not give appellant permission to take the calf.

Richard Young, on whose place the calf strayed and was penned, testified that he did not give appellant consent to take the calf.

Testifying as a witness in his own behalf, appellant admitted taking the calf from the Young place and selling it at the auction but swore that he thought the calf was his. Appellant swore that he did not represent himself as Jack Logan in making the sale and stated that the name, "Logan," was a mistake and the result of the wrong tag being put on the calf. Appellant denied pointing out to Inspector O'Neal the place where he was supposed to have unloaded the calf in his pasture and also denied telling him that he had sold the calf under an assumed name. He also denied telling Kitchens that he did not realize the calf was

not his until it was in the auction ring and he saw it had recently been castrated. Appellant stated that he paid Kitchens for the calf, to settle the matter. In his testimony, appellant at first swore that he took the check which he received for the sale of the calf to a bank at Hamlin, where he endorsed it and applied the proceeds on a mortgage. When confronted with testimony from the vice-president of the bank that no payment was made on the mortgage at that time, appellant changed his testimony and swore that he cashed the check at Pinky's County Line Store.

The issue of appellant's guilt was submitted to the jury upon the state's theory of theft by false pretext.

Appellant insists that the evidence is insufficient to support the conviction because the state did not meet its burden of proof, under the allegations of the indictment, by showing that he took the calf without the consent and permission of *all* of the three parties named therein, to-wit: Kitchens, Young, and Rogers. It is appellant's contention that because Rogers consented to his taking the calf, the proof fails to sustain the allegations of the indictment.

We find no merit in this contention, as, under the record presented, appellant stands convicted of theft by false pretext, which is authorized under an ordinary indictment for theft, even though the taking may be with consent of the owner.

■ In 5 Branch's Ann.P.C., page 126, Sec. 2680, it is stated:

"Under an ordinary indictment or information for theft charging that the property was taken without the consent of the owner, a conviction may be had for theft though the taking was with the consent of the owner if the proof shows that such consent was obtained by any false pretext. Maddox v. State, 41 Tex. 205; Quitzow v. State, [Tex.] 1 [Tex.] App [65] 70; Berg v State, 2 [Tex.] App [143] 153; Jones v State, 8 [Tex.] App [648] 649; Hud-

son v State, 10 [Tex.] App [215] 229; Dow v State, 12 [Tex.] App [343] 345; Morrison v State, 17 [Tex.] App [34,] 37; Atterberry v State, 19 [Tex.] App [401] 407; Taylor v State, 25 [Tex.] App [96] 101, 7 SW 861; Jones v State, [Tex.Cr.App.] 49 SW 387; Lewis v State, 48 [Tex.] Crim [R.] 311, 87 SW 831; Glascow v State, 50 [Tex.] Crim [R.] [639] 639, 100 SW 933; Hawkins v State, 58 [Tex.] Crim [R.] 407, 126 SW [268] 269; Anderson v State, 77 [Tex.] Crim [R.] 31, 177 SW 85; Hedge v State, 89 [Tex.] Crim [R.] 236, 229 SW 862 [14 A.L.R. 889]; Brady v State, 108 [Tex.] Crim [R.] 606, 2 SW 2d 261; Barnett v State, 119 [Tex.] Crim [R.] 594, 43 SW2d 449; Welch v. State, 153 [Tex.] Crim [R.] 416, 219 SW2d 804; Gibbs v State, 158 [Tex.] Crim [R.] 145, 253 SW2d 1002; Wade v. State [161 Tex. Cr.R. 195], 275 SW2d 665 (dissenting opinion)."

Appellant also insists that the testimony introduced by the state did not authorize a charge on theft by false pretext because no false pretext was shown to have been made to the three owners named in the indictment. It is pointed out that as to the alleged owners Kitchens and Young, no representation was made by appellant. It is also insisted that the representation made by appellant to Rogers that he *thought the calf was his* was not such as to raise an issue of theft by false pretext.

■ We do not construe the allegations of the indictment as requiring proof of a false representation to Kitchens and Young. Under the terms of the indictment, appellant was charged with taking the calf from "the possession of Lon Rogers, employee of Richard Young, who, as said employee, was holding same for said John Dale Kitchens." To sustain appellant's conviction under the indictment, it was not necessary to show that he obtained possession of the calf by making a false pretext to Kitchens and Young but only to Rogers,

who was alleged to be holding the same for Kitchens. The actions of appellant in claiming the calf, telling Rogers he thought it was his, and hauling it away were sufficient to raise an issue of theft by false pretext. Verbal assertions or direct representations are not required to show false pretenses or representations, as they may be shown by a party's conduct and acts. Dixon v. State, Tex.Cr.App., 215 S.W.2d 181. The contention is overruled.

Appellant's other contentions pertain to the court's charge and present the question of whether the issue of theft by false pretext was raised by the evidence.

█ No error is perceived in the charge. The court's refusal to charge the jury that the consent of Young and Kitchens was not required in the disposal of the animal and that Lon Rogers had the sole authority to dispose of it was not error, as such instruction would have been upon the weight of the evidence.

The judgment is affirmed.

Opinion approved by the court.