Montgomery Fly CAMERON, Appellant,

v.

W. B. HAUCK, Sheriff of Bexar County, Texas, Appellee.

No. 23844.

United States Court of Appeals Fifth Circuit.

Sept. 5, 1967.

Rehearing Denied Oct. 4, 1967.

Hume Cofer, Austin, Tex., Luther E. Jones, Jr., Corpus Christi, Tex., for appellant.

Preston H. Dial, Jr., Dist. Atty., San Antonio, Tex., Lonny F. Zwiener, Asst. Atty. Gen., Austin, Tex., James E. Barlow, Crim. Dist. Atty., San Antonio, Tex., for appellee.

Before THORNBERRY, GOLDBERG, and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

Herein of the assessment and application of constitutional standards in the case of the disappearing emerald cufflinks. The facts are no mystery.

The defendant, Cameron, an interior decorator in San Antonio, Texas, was given a pair of emerald cufflinks by a friend. The cufflinks were large. The emeralds in them weighed more that 58 carats, and had been cut in a shape which jewelers call "cabachon," meaning convex and without facets. They had been manufactured by Julius Cohen of New York City in 1963, and sold to Cameron's donor.

Cameron told Cohen, when the latter was in San Antonio, that he was displeased with the cufflinks, and wished to return them to Cohen. Cohen took the cufflinks with him when he returned to New York. A long correspondence ensued between Cameron and Cohen, in which the possibility of Cameron's taking other cufflinks in exchange was discussed. On March 30, 1964, however, Cameron wrote Cohen stating that he wished the emerald cufflinks to be returned. Cohen immediately returned them by registered mail.

Shortly later Cameron asked Cohen if he could return the emerald cufflinks again, in connection with some additional work to be done by Cohen on another pair of cufflinks owned by Cameron. Cohen agreed, took back the emerald cufflinks, and credited Cameron's account with $2,200.

Cohen had previously appraised the emerald cufflinks at $3,400, and on January 10, 1964, Cameron insured against the loss of these cufflinks with Aetna Casualty and Surety Company, valuing them at $3,400.

On July 27, 1964, Cameron reported the "loss" of the cufflinks to Aetna. Later he filed a proof of claim and collected $3,400 from Aetna's Claim Agent, Charles Hedlund.

On January 1, 1965, charges of theft were filed against Cameron before a Justice of the Peace. He requested and was given an examining trial. See Vernon's Ann.Texas Code Crim.Proc., Arts. 15.17 and 16.01–16.21. At this examining trial, held on February 3, the state produced three of the six witnesses and most of the documentary evidence used at the full trial. Cameron, who then had the retained counsel later used at trial, had the right to, and did, cross-examine those witnesses. The defense also produced a witness at the examining trial who testified for the state at the full trial.

On February 23 the Grand Jury indicted Cameron for theft of the money received from the false insurance claim.[1]

---

1. The indictment, reads:

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS THE GRAND JURORS duly selected, organized, empaneled, and sworn as such for the County of Bexar, State of Texas, at the January term, A.D. 1965, of the 144th District Court of Bexar County, State of Texas, upon their oaths, present in and to said Court that on or about the 24th day of September, A.D. 1964, and anterior to the presentment of this indictment in the County of Bexar and State of Texas, Montgomery Fly Cameron did then and there unlawfully and fraudulently take from the possession of Charles Hedlund, the following property, to-wit: Money of the United States of America of the value of over Fifty and No/100 ($50.00) Dollars, the same then and there being the corporeal personal property of and belonging to the said Charles J. Hedlund without the consent of the said Charles J. Hedlund and with the intent then and there on the part of him, the said Montgomery Fly Cameron to deprive the said Charles J. Hedlund of the value of the same, and

He was later tried, convicted, and sentenced to two years in prison. The Court of Criminal Appeals affirmed the conviction. Cameron v. State, 1966, Tex. Cr.App., 401 S.W.2d 890. All parties agree that he has exhausted his state remedies, as the issues raised here were raised and decided in the Court of Criminal Appeals.

Cameron sought habeas corpus in District Court which was denied. He appeals, and we affirm the denial of the Writ.

## I.

Knewel v. Eagan, 1925, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036, holds that questions concerning the sufficiency of an indictment cannot be raised on habeas corpus unless they go to the jurisdiction of the court which tried the offense. This case is widely held to be authoritative on such issues as we have here. Stewart v. Dunn, 5 Cir. 1966, 363 F.2d 591 (dictum); United States ex rel. Tangredi v. Wallack, 2 Cir. 1965, 343 F.2d 752, 753; Kimbro v. Bomar, 6 Cir. 1964, 333 F.2d 755.

However, the Supreme Court has questioned Knewel v. Eagan in Fay v. Noia, 1963, 372 U.S. 391, 412, 83 S.Ct. 822, 834, 9 L.Ed.2d 837, 853, and Knewel may no longer be the law.[2] See Johnson v. Walker, 5 Cir. 1963, 317 F.2d 418, 419. This being so, we consider the merits of Cameron's claim concerning the validity of the indictment.

## II.

Cameron first claims that his indictment was insufficient by federal constitutional standards to support a conviction for theft by false pretext.

■ Cameron was indicted for felony theft (see footnote 1, supra). Felony theft is defined in Vernon's Ann.Tex. Pen.Code Art. 1410.[3] Further definition follows in succeeding Articles. Article 1411 states that the property taken must have some specific value. Article 1412 states that asportation is not essential to theft. Article 1413 states:

The taking must be wrongful, so that if the property came into the possession of the person accused of theft by lawful means, the subsequent appropriation of it is not theft, but if the taking, though originally lawful, was obtained by any false pretext, or with any intent to deprive the owner of the value thereof, and appropriate the property to the use and benefit of the person taking, and the same is so appropriated, the offense of theft is complete.

Under this article it is clear that theft by false pretext is included within the general notion of theft, and the Texas Court of Criminal Appeals (the court of last resort in Texas criminal matters) has held from the earliest years of the Penal Code that an indictment for theft will support a conviction for theft by false pretext. E. g., Vick v. State, 1965, Tex.Cr.App., 397 S.W.2d 229; Hogan v. State, 1965, Tex.Cr.App., 393 S.W.2d 898

---

with the intent to appropriate the said property to the use and benefit of him, the said Montgomery Fly Cameron; against the peace and dignity of the State.

2. The Court said: "[o]ur development of the law of habeas corpus has been attended, seemingly, with some backing and filling. * * *

"In some of the cases the denial of the remedy on jurisdictional grounds seems to have been chosen in preference to decision of the merits of constitutional claims felt to be tenuous. * * * [Citing, inter alia, Knewel]." 372 U.S. at 412, 83 S.Ct. at 834, 9 L.Ed.2d at

853. Footnote 24 says in part: "In Knewel the basis of the habeas petition was a claim of pleading deficiencies and improper venue under state law. Petitioner's assertion that his constitutional rights had been infringed was thus scarcely colorable." Ibid.

3. ARTICLE 1410. "Theft" defined.
   "Theft" is the fraudulent taking of corporeal personal property belonging to another from his possession, or from the possession of some person holding the same for him, without his consent, with intent to deprive the owner of the value of the same, and to appropriate it to the use or benefit of the person taking.

(see cases cited 393 S.W.2d at 900); Gibbs v. State, 1953, 158 Tex.Cr. 145, 253 S.W.2d 1002; Hawkins v. State, 1910, 58 Tex.Cr. 407, 126 S.W. 268; Morrison v. State, 17 Tex.App. 34.

According to Cameron, the problem arises because under Art. 1413, the crime of theft by false pretext requires proof of appropriation of the property, "to the use and benefit of the person taking." On the other hand, he claims, only the intent to appropriate, and not appropriation itself, need be shown under Article 1410.

■■ This argument appears alluring at first glance, but upon examination it disintegrates. The element of "appropriation" under 1413 is subsumed under the element of "taking" under 1410. In the Texas cases which discuss whether or not an appropriation has occurred under 1413, the clear question under discussion is whether the defendant has done anything inconsistent with the true owner's ownership of the property; in other words, whether the defendant has acted adversely to the true owner's ownership. McCain v. State, 1942, 143 Tex.Cr. 521, 158 S.W.2d 796; Riggs v. State, 1934, 125 Tex.Cr. 647, 70 S.W.2d 164. Especially instructive is Jones v. State, 1899, Tex.Cr.App., 49 S.W. 387. In that case the defendant had hired a horse later in the day at Corsicana, where he stated that he intended to return the horse to its owner. The Court stated in part:

> " * * * the proof must show that the obtention of possession was by means of some false pretext made for that purpose, and that the party had the intent at the time to deprive the owner of the value thereof, and to appropriate the property to his own use, and that he did so appropriate it.

Measured by this rule, it does not appear to us that the proof shows these constituent elements of the offense beyond a reasonable doubt. So far as the evidence discloses, there was no positive proof of an actual appropriation of the property. It is true this proof can be made by circumstances, and the party may convert the property to his own use while he still has it in possession, not having parted with it; but in such case the proof should establish the fact of the appropriation beyond a probability or suspicion. So far as we are advised from the testimony, there was no concealment on the part of appellant when found at Corsicana as to where he got the horse, and his conduct there was not inconsistent with his trusteeship and his intent to restore such horse to the owner."

The same considerations are crucial to deciding whether there has been a "taking" under 1410. E. g., McKnight v. State, 1966, Tex.Cr.App., 399 S.W.2d 552; Johnson v. State, 1958, 165 Tex.Cr. 468, 308 S.W.2d 869; Barnes v. State, 1942, 145 Tex.Cr. 131, 166 S.W.2d 708; Kiser v. State, 1941, 141 Tex.Cr. 530, 150 S.W.2d 257; Ainsworth v. State, 1930, 115 Tex.Cr. 321, 30 S.W.2d 310; compare Smith v. State, 1945, 148 Tex. Cr. 386, 187 S.W.2d 572.

■ Similarly, where there is no doubt about the fraudulent intent of the defendant in a theft by false pretext prosecution, there is no necessity of showing what defendant did with the property once he had it. Proof of "appropriation" in such cases is satisfied by a mere proof of taking. Lovine v. State, 1938, 136 Tex.Cr. 32, 122 S.W.2d 1069; Hawkins v. State, 1910, 58 Tex.Cr. 407, 126 S.W. 268.[4] The question of whether

---

4. Cf. the following language from McCain v. State, supra, 143 Tex.Cr. at 524, 158 S.W.2d at 798:
   " * * * appellant was exercising ownership of the horse in offering to sell it for $15, which was much less than its proven value, and the offer to sell was inconsistent with appellant's trusteeship under his pretended borrowing which, if in good faith, contemplated a return of the property to its owner, and not a sale of it by the pretended borrower. We quote from 41 Tex.Jur. Sec. 43, p. 63: 'The manner of consummating the appropriation is immaterial. It need not be accom-

there has been an [8]"appropriation" has been treated identically with the question of "taking." See the remarkable opinion of Judge Beauchamp in Black v. State, 1941, 141 Tex.Cr. 468, 149 S.W.2d 968.

The Court of Criminal Appeals, in the present case, drew the obvious conclusion:

> "Under the provision of Art. 1413 * * *, the only difference between theft by false pretext, defined therein, and ordinary theft [as defined in 1410] is the circumstances by which the property came into possession of the accused."

Thus, the use of "appropriation" in 1413 adds nothing of substance to the crime defined in 1410, because no additional element of, or defense to, the crime of theft is created by its use.[5] Cameron was not disadvantaged by the failure of the state to allege appropriation, because that allegation would have been surplusage.[6]

We hold that the indictment sufficiently apprised Cameron of all of the elements of the offense he was charged with, and that Cameron's argument that he was indicted for one offense and tried for another is without merit. Cameron relies heavily on Cole v. State of Arkansas, 1948, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644. There, the defendants were indicted, tried, and convicted in the trial court for assembling near a place where a labor dispute existed, and by force and violence, there preventing a person from engaging in a lawful occupation. This offense violated § 2 of an Arkansas law. On appeal the defendants challenged the constitutionality of § 2, and the Arkansas Supreme Court held that it need not consider these constitutional claims because the convictions could be affirmed under § 1 of the same act, which set out the different offense of acting singly with force and violence to prevent anyone from engaging in a lawful occupation. The United States Supreme Court held that the crimes set out by § 1 and § 2 were different, and that affirmance of the convictions under § 1 was invalid, because the defendants had not been indicted or notified at any time during trial that § 1 would be, ultimately, the charge against them.

■ In the present case we hold that under Texas law, the crimes described by 1410 and 1413 are the same and that a charge under 1410 notifies a defendant of all elements of a 1413 offense.[7] Theft is a synoptic concept: the Eighth Commandment condemns theft without explaining every possible nuance and contrivance in its accomplishment. Theft by false pretext is merely one genus of the species, and Texas has treated it so. This statutory treatment makes sense. It is not a whimsical conjuration. See Jackson v. United States, 1962, 114 U.S.App.D.C. 181, 313 F.2d 572.

■ The Constitution does not impropriate the crime-defining functions of the states. It proscribes prosecution

---

plished by stealth, nor is it necessary, in order to constitute a conversion or appropriation that the property be sold.' "

5. The wording of 1413 suggests that it, like Articles 1411–1412 and 1414–1419, is definitional merely, and does not set out a separate offense. Indeed 1413 deals specifically with the belief at common law that a taking by false pretext was "lawful" because of the "consent" of the owner. Instead of striking down this fiction and stating that a taking by false pretext is as unlawful as other kinds of theft, 1413 instead travels the more circuitous route of stating that "if the taking, *though originally lawful, was obtained by false pretext, * * *

and the * * * [*property*] *is* * * * *appropriated* [*to the use and benefit of the person taking*], the offense of theft is complete." [Emphasis added.] Thus, the original taking is still deemed "lawful," so the "wrongful taking" element of 1410 is announced in 1413 by the word "appropriate."

6. Any indication to the contrary from the out-of-point case of Heidenrich v. State, 1943, 145 Tex.Cr. 468, 168 S.W.2d 254, has obviously been disapproved of by the later cases.

7. Reliance by Cameron on federal cases controlled by Rule 7, F.R.Crim.P., is misplaced. The Federal Rules do not apply to state cases.

where indictments do not meet constitutional standards.

"Courts measure the sufficiency of an indictment by two basic criteria: '[F]irst, whether the indictment "contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet,'" and, secondly, "'in case any other proceedings are taken against him for a similar offense whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" "Russell v. United States, 1962, 369 U.S. 749, 763, 764, 82 S.Ct. 1038, 1047, 8 L.Ed.2d 240, 250–251; Van Liew v. United States, 5 Cir., 1963, 321 F.2d 664, 669."

Webb v. United States, 5 Cir. 1966, 369 F.2d 530, 535–536.

The indictment informed Cameron of all of the elements of the offense, and provides a sufficient shield for the plea of prior acquittal or conviction. See e. g. Carlile v. State, 1923, 97 Tex.Cr. 477, 262 S.W. 489; compare Donahoo v. State, 1955, 161 Tex.Cr. 456, 278 S.W.2d 138. Cameron was supplied by the examining trial with a detailed precis of the facts which the government intended to prove. He did not claim surprise at the full trial.

■ In fact, Cameron's only real complaint is that 1413 explains the offense in different terms from 1410 and the indictment. But both explanations are complete and coextensive. While a more felicitous wording of 1413 is imaginable, its present form does not deny due process. Spencer v. State of Texas, 1967, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606.

### III.

■ Cameron's next argument arises because under Texas law an indictment for theft by false pretext may be stated either in terms of 1410, as in the present case, or in terms of 1413. Where the indictment is in the latter form, failure to allege appropriation renders it fatally defective. Byrd v. State, 1965, Tex.Cr. App., 388 S.W.2d 196; Schoenbeck v. State, 1956, 163 Tex.Cr. 14, 288 S.W.2d 121; see McCuiston v. State, 1942, 143 Tex.Cr. 283, 158 S.W.2d 527, 141 A.L.R. 205.[8]

■ Cameron argues:

"Even if it should be held that the Fourteenth Amendment due process right to a specific accusation does not forbid prosecution for theft by false pretext on an ordinary theft indictment, it is evident that an accused who is so prosecuted is deprived of the protection of the laws afforded an accused who is prosecuted on an indictment which charges theft by false pretext; because the latter accused, but not the former, is guaranteed by Texas law that his indictment must state the essential elements of the offense with which he is charged. The result is that the accusing and prosecuting authorities have an election, in theft by false pretext prosecutions against similarly situated individuals, to allege or not to allege the essential elements of the offense."

As we hold that an ordinary theft indictment framed under 1410 contains all of the elements of theft by false pretext, Cameron's argument here is reduced to claiming that the equal protection clause is violated if the prosecutor chooses a simpler form of indictment when a more complicated form, more prone to fatal defect, is available. Cameron seeks only to fish for error in a larger pond. Such a foray is not protected by the equal protection clause.

### IV.

■ Cameron's final argument is based upon the following language in the

---

8. It should be noted that *McCuiston* and other cases cited by Cameron deal with the problem of distinguishing theft by false pretext from swindling, a separate issue under Texas law. See Steele, Misappropriation Without Violence in Texas, 10 Southwestern L.J. 415 (1956).

opinion of the Court of Criminal Appeals in the present case:

It is appellant's contention that because the court's charge authorized the jury to convict him upon a finding that he fraudulently represented that the set of cufflinks was "lost, stolen, or misplaced" and there was no proof that he represented that the cufflinks were stolen, it is impossible to determine whether the verdict had any factual basis in the evidence.

While there was no proof that appellant represented that the cufflinks were stolen, there was proof in the record that he represented that they were lost or misplaced. The general verdict of guilty can be applied to that portion of the charge submitting the question of his misrepresentation that they had been lost or misplaced, which has support in the evidence.

Cameron cites, among others, Stromberg v. People of State of California, 1931, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117; Williams v. State of North Carolina, 1942, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279, and Shuttlesworth v. City of Birmingham, 1965, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176. None of these cases applies here. The cited cases are relevant where the jury is told that it may convict upon any of several inculpatory theories which are all supported by evidence, and the jury renders a verdict of guilty, and on appeal one of the theories upon which the jury was charged is held legally incapable of supporting a conviction. In such cases it is impossible to tell from the general verdict upon which of the theories the jury had convicted. The obvious assumption is that the jury, being incapable of deciding whether a legal theory is valid or invalid, might decide to convict upon an invalid theory which is supported by the evidence. Such convictions violate due process.

 In the present case Cameron asks us to assume quite another matter: i. e., that the jury having been given three legally valid possibilities for a false representation, may have chosen to convict upon the one of the possibilities for which there was no evidence. But deciding the facts is the jury's province, and our jury system is founded upon the notion that juries decide facts in accordance with the evidence. There was substantial evidence to support a jury finding that Cameron had falsely represented the cufflinks to be lost or misplaced. The jury was not misled as to the law. We do not think, upon this record, that the slight possibility of jury prejudice mentioned by Cameron here comes anywhere near suggesting a violation of due process. Cf. United States ex rel. Colon v. Follette, 2 Cir. 1966, 366 F.2d 775; United States ex rel. Castillo v. Fay, 2 Cir. 1965, 350 F.2d 400, cert. denied, 1966, 382 U.S. 1019, 86 S.Ct. 637, 15 L. Ed.2d 533.

Even tested by the protective standards of Fay v. Noia, supra, Cameron's attacks are meritless and do not approach Constitutional measurement.

The judgment is affirmed.