**Arthur Gene RUSSELL, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38452.**

Court of Criminal Appeals of Texas.

Nov. 3, 1965.

Rehearing Denied Dec. 8, 1965.

Pat McDowell, Dallas, for appellant.

Henry Wade, Dist. Atty., John Vance, Tom Reese and W. John Allison, Jr., Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for robbery; the punishment, twenty years.

The testimony reveals that John Henry Pruitt and Stene Burnley left the Cates Pharmacy after a brief visit, and that about one hour later Pruitt, Burnley and the appellant entered the pharmacy. While the appellant remained within about two feet of the front door, Pruitt and Burnley went to the Coca Cola box, and then Pruitt went to the rear of the store and Burnley asked a clerk about some cologne. When John Cates, the pharmacist who was behind the prescription counter at the rear of the store, looked up, Pruitt was pointing a sawed-off shotgun toward him. Pruitt told Cates that, "It's a holdup," that he wanted narcotics and for Cates not to look at him. Cates offered Pruitt some demoral and other narcotics which he took from a safe, but Pruitt said he wanted morphine and dilaudid. When Cates told Pruitt that the morphine was in the safe at the front of the store, Pruitt told him to go get it. After the clerk and Burnley arrived at the cologne counter, Burnley asked about two Timex watches, and then placed something against the clerk's back and said, "Lady, go to the back. This is a holdup." On arriving at the prescription counter, they saw Pruitt holding a gun against Cates. At the direction of Pruitt, Cates went to the front of the store where he saw a man standing at the front door, and Cates then opened the safe underneath the cash register and carried the "hard" narcotics, which were in a silver painted box, toward the rear and Burnley took the box and placed it in a large paper sack. The clerk, from the rear of the store, saw the appellant in front of the cash register. Later, an examination of the cash register revealed that a key

letter which had never been used had been pushed in in an apparent effort to open it. The clerk and Cates, while testifying, identified a towel as appearing like the one used by Burnley in handling the telephone which was near the prescription counter. At this time Burnley, directing his voice to the front, called to the man at the front saying, "Come on, we're going out the back," and Burnley used the towel to open the door. When the man came from the front, the three men went out through the rear door of the pharmacy.

John Cates testified that he was in possession of all the property in the pharmacy and never gave anyone his consent to take any of it, and that he was in fear of his life and serious bodily injury at the time the property described was taken.

In a brief time after the robbery, two deputy sheriffs observed a car at a stop sign bearing the description given in a police radio dispatch. While pursuing this car they could only see two men, and saw an object thrown from the car, and due to the speed and manner of its operation travelled some distance before it stopped. On approaching the car they saw the appellant lying on the rear seat. Pruitt had been driving and Burnley was seated on the right front seat. On the front floorboard they found a large paper sack containing several vials and bottles, two empty watch cases were in the glove compartment, a towel was under the right side of the front seat, and a small wooden box was in the rear on the left side on the floorboard. Pruitt had a watch on each arm, and Burnley had one on his arm. A 12 gauge sawed-off shotgun was found by the officers at the place where they had seen an object thrown from the car.

Cates and the clerk identified both Pruitt and Burnley as two of the persons committing the robbery, and the clerk positively identified the appellant as the man who entered the pharmacy the second time Pruitt and Burnley entered, and then stood at the front door and left through the rear door after Burnley called to him that they were going out the rear door. The Timex watches returned by the officers were identified by Cates and the clerk as being in the store before the robbery and missing afterwards. Cates also identified the vials and bottles which were removed from the car as those taken from him during the robbery.

The appellant did not testify or offer any evidence in his behalf.

■ Appellant contends that the trial court erred in charging on the law of principals; and again erred in failing to charge on the law applicable to circumstantial evidence.

The testimony reveals that the appellant entered the pharmacy at the same time that Pruitt and Burnley entered the second time, that he stood within two feet of the front door, except when he was seen in front of the cash register, until Burnley called to him from the rear of the store saying that they were going out through the rear door, and then appellant went to the rear and the three men left together. In a brief time the officers overtook the get-away car which was speeding and found the appellant lying down in the rear seat, and also found the robbery loot in the car. The two contentions as directed to the charge do not present error.

Error is urged in the prosecutor's argument to the jury that "they wanted the 'hard stuff,' they wanted the 'hard narcotics.' And what do you do with them? You either use them or sell them," on the ground that such argument was not supported by the evidence and injected a new and damaging fact before the jury. The objection thereto was sustained and the jury instructed not to consider such argument.

There is testimony that the robbers took vials and bottles containing "hard narcotics" which is a high classification of narcotics.

■ In view of the trial court's ruling and instruction, and the evidence, the re-

marks do not constitute reversible error. Moreno v. State, 163 Tex.Cr.R. 477, 293 S.W.2d 665.

The appellant insists that the state's attorney erred in arguing to the jury: " 'It has not been denied,' or words to that effect, the exact words are not known to the defendant, but the same will appear in the record of the proceedings taken by the court reporter during the jury argument," on the ground that such argument was a direct comment on the failure of the appellant to testify.

■ An examination of the separate statement of facts containing the jury argument approved by counsel for the appellant fails to reveal that the argument complained of was made. Therefore, this contention presents nothing for review.

■ The evidence is sufficient to support the conviction, and no error appearing, the judgment is affirmed.

Opinion approved by the Court.