Roy Eugene MORRIS, Appellant,

v.

The STATE of Texas, Appellee.

No. 38715.

Court of Criminal Appeals of Texas.

March 2, 1966.

Rehearing Denied May 18, 1966.

**162**

Samuel L. Egger, San Antonio, for appellant.

Leon B. Douglas, State's Atty., Austin, for the State.

BELCHER, Commissioner.

The conviction is for felony theft by false pretext; the punishment assessed was ten years.

The prior opinion dismissing the appeal is withdrawn, and the appeal is re-instated.

On February 2, 1965, the appellant, Roy Morris, and Robert Lovell sold and installed lightning rods on the residence of Inez Benham, an 82 year old widow, which she paid for by check in the sum of $196. The Benham home was located about three miles from the town of Goliad. While testifying, Mrs. Benham identified Lovell when he momentarily appeared in the courtroom as the man with appellant at her home on February 2.

About 12 o'clock noon on February 10, 1965, the appellant, Charles Fralix and K. O. Short went to the Benham home in a black pickup with a small tank in it. Benham identified the appellant as the man who talked to her first, telling her that he was one of the men who installed the lightning rods, and while there he saw some insects,

forgot to tell her about them, and one of the men with him wanted to spray her house. When she inquired about the charge, Fralix said the spray would be $4.50 per gallon and he could not tell how much it would take until he did the job, "So I went ahead." During the time Allison and Short sprayed, the appellant was in and around the house. Benham testified that the time they started spraying until they stopped was about thirty or forty-five minutes. While appellant and Short sat in the pickup, A. L. Allison made out the bill in the kitchen. The man making out the bill had represented to Benham that his name was A. L. Allison, but now known to be Charles Fralix. When Benham asked how much spray he had used, Allison responded, "Three hundred gallons." Allison then made and presented her a bill for $1,377. Benham told Allison (Fralix) that this is an enormous price, and asked him how did he know the number of gallons was used and he replied that he had a gauge on the tank. Allison prepared the check, presented it to Benham and she signed it and he left. Shortly Allison returned and said, "Lady, I have charged you twenty dollars too much. If you will give me a new check I will tear this one up." She gave him another check for $1,357, and Allison walked to the waste paper basket and she thought he tore it up, instead he kept the check. The first check was for $1,377 payable to Allison and the second check was payable to K. O. Short for $1,357. The appellant told her his name was Cory, that he lived in Houston and had been around Victoria two weeks with his aunt. The sheriff was notified the next morning. The $1,357 check to K. O. Short was cashed February 10, before payment could be stopped, but payment on the $1,377 check was stopped.

Robert Lovell testified that he and appellant lived in San Antonio on February 10, 1965, and that appellant never lived in Victoria or Houston; and that he and appellant left San Antonio in appellant's pickup while Fralix (Allison) and Short left in a black pickup with a 40 to 50 gallon tank in it be-

longing to Fralix, and that all four were travelling together; that they used about one-half of the liquid in the tank on a termite job in Beeville. While all four were staying in a motel in Victoria they talked about a termite job in that area; that appellant said Mrs. Benham "might be a good mark" for termites, and they decided to go to her house but Lovell declined, and appellant, Fralix and Short left about 10 or 11 a. m., February 10, going to Mrs. Benham's. After the termite job Fralix telephoned from Goliad that the pickup wouldn't run, and Lovell went for them, and on their return Fralix said he had $1,350 which they had gotten from Mrs. Benham; that she was an easy mark and they went back and got another check. Fralix was using the name of A. L. Allison. In Victoria Fralix divided the money four ways, giving Lovell and the appellant each $300.

After using his driver's license which the cashier asked for as identification, K. O. Short cashed the check in Goliad, but when asked what the check was for explained that he had done some construction work for Mrs. Benham including the foundation of her home which he said was in a terrible condition due to termites.

John Cox testified that his primary business since 1955 had been termite and pest control; that his company serviced a large area and had a large volume of termite business, and he knew the standards promulgated for termite control by the Department of Agriculture; that he inspected the residence of Inez Benham on March 24, 1965, and found that it had lots of live and working termites underneath the house, and the sills were extremely damaged; there was no evidence of any recent construction or repair work on the house within the previous month; that there were no signs of any treatment for termites; and that a reasonable charge for a complete termite and pest control job for the Benham house would not be over three hundred dollars.

Testifying in his own behalf the appellant stated that he lived in San Antonio and was a self-employed painter, and had known Robert Lovell ten years, and that they had sold lightning rods to Mrs. Benham on February 2; that he left San Antonio with Lovell, Fralix, and Short about February 7; that he knew nothing about and had never engaged in the termite business; that while they were talking about termites, he said he knew a lady whose house might have termites, and Fralix asked if he would take him over there, which he did along with Short; that he was not present when the deal was made, but sat in the truck most of the time. After they left, Fralix said they had to go back which they did, and appellant and Short sat in the car until Fralix returned from the Benham home. Fralix handed Short the check saying, "You go cash this, it is under your name"; and Short entered the bank and returned after five or ten minutes. Because of car trouble, Lovell came from Victoria for them and on their return appellant first learned that they got $1,350 for the termite job. After arriving in Victoria Fralix said to appellant, "There is your part," handing appellant $300 which he took and paid some obligations. On cross-examination the appellant testified that they did a $150 termite job in Beeville on the way to Victoria and he got $25 or $30 as his part; that there was a fifty gallon tank on the pickup and Fralix had one or two gallon jugs of extra solution; and he denied that he told Benham that he lived in Houston or that his name was Cory, or that he said Benham was an easy mark; that he never told Benham that Fralix's name was Allison, but knew that Fralix got the check in Beeville in the name of Allison. Appellant and Lovell knew Fralix had a driver's license of one A. L. Allison, and the evidence reveals that A. L. Allison lost his driver's license on July 18, 1964, in San Antonio. After returning to San Antonio Fralix and appellant left to let things "cool off." Appellant testified that he had no intentions of swindling Mrs. Benham out of any money.

The evidence reveals that a person representing himself to be A. L. Allison deposit-

ed a $1,377 check in the Heights State Bank in Houston on March 5, 1965, and exhibited a driver's license of A. L. Allison at the time. The check was returned unpaid. Later, the same man appeared at the drive-in window and was using the name of Charles Fralix.

The appellant called several witnesses who testified that his general reputation for truth and veracity was good.

The court submitted this cause to the jury upon the law of principals.

■ The evidence is sufficient to warrant the jury's finding that the appellant is guilty.

Complaint is made of the testimony given by Inez Benham at the beginning of the trial regarding the use by Fralix of the name of A. L. Allison on the ground that it was outside of the presence of the appellant, and further of the remarks of the district attorney in repeatedly using the word "conspiracy" because the indictment charged theft and not conspiracy.

■ Other facts and circumstances revealing these matters were later introduced in evidence. The order alone in which testimony is admitted does not affect its admissibility.

Appellant urges error in the admission in evidence: of the contract Fralix wrote out on the kitchen table; to the testimony that Fralix wrote out a check for $1,377 which Mrs. Benham signed; to the admission of the $1,377 check; to the testimony regarding the obtaining of the $1,357 check; and to the testimony of the cashier at the Goliad bank with Short; on the ground that each and all are hearsay and not admissible in evidence.

Appellant further insisted that error was committed in the admission of the testimony of Assistant Vice-President of the Heights State Bank in Houston that on March 5, 1965, a man opened an account in the name of A. L. Allison by depositing a $1,377 check drawn on the First National Bank of Goliad signed by Mrs. Benham, and this man later came to the drive-in window and gave his name as Charles Fralix. Objection was made to such testimony on the ground that it showed extraneous offenses and had no connection with the appellant.

The evidence reveals that appellant accepted twenty or thirty dollars as his share in a termite job they did in Beeville while on the way to Victoria and furnished the information that Mrs. Benham might be an easy mark for a termite job, accompanied Fralix and Short to her home and introduced Fralix, saying, "This gentleman is a termite man"; that appellant remained in and around the house until Fralix got a check, and soon returned to Mrs. Benham's house and waited for him; that they went to a Goliad bank where Short cashed a check and the appellant accepted three hundred dollars of the money. The testimony also reveals that in appellant's presence after they left Goliad there was conversation that Mrs. Benham was an easy mark, that one check was made out to Allison and on going back they got another check in Short's name. Further, when talking about splitting the money they talked about the Allison check which Fralix said he had.

■ The participation of the appellant in the enterprises as shown, and the $1,377 check which had not been cashed and the proceeds divided, authorizes the admission in evidence of the above matters including the testimony of the transaction at the time the $1,377 check was deposited in the Houston bank for collection. Whitehead v. State, 148 Tex.Cr.R. 190, 185 S.W.2d 725.

■ Error is urged on the ground that the court failed to charge on circumstantial evidence. The participation of the appellant who furnished the information leading to Mrs. Benham and his acceptance of part of the money with knowledge of its origin made it unnecessary to charge on circumstantial evidence.

Formal bill No. 5 relates to the sheriff having charge of the jury part of the time and testifying as a witness in the case. The sheriff's testimony only reveals that he notified the bank to stop payment on two checks given by Mrs. Benham, and in doing so learned one of them had been cashed. This bill reveals no error when considered in the light of Turner v. State of Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424.

The other contentions presented have been considered and they do not reveal error.

The judgment is affirmed.

Opinion approved by the Court.