Manuel Gardenas GAMBOA, Appellant,

v.

The STATE of Texas, Appellee.

No. 50020.

Court of Criminal Appeals of Texas.

Oct. 15, 1975.

Woody & Rosen, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Stu Stewart, Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

ROBERTS, Judge.

This is an appeal from a conviction for the offense of murder with malice aforethought under Arts. 1256 and 1257, V.A.P.C. Appellant was tried before a jury and the jury assessed punishment at thirteen years' imprisonment.

In this appeal, appellant complains of the refusal of the trial court to submit a charge on circumstantial evidence. Such a charge was timely requested in writing by appellant who also filed written objections and exceptions to the court's charge complaining of the omission of the circumstantial evidence charge.

The evidence showed that appellant and his wife, Maria Gamboa, had an abrupt separation on June 14, 1969, and that she took the children and went to live with appellant's sister-in-law, Minnie G. Gamboa, the deceased. Although the children subsequently returned to live with appellant, his wife remained with the family of the deceased. On June 30, 1969, appellant left Hermann Hospital without being discharged, where he had been receiving heavy medication for an old back injury. After a stop at the home of his sister, Jane Rivera, appellant went to the deceased's home where he once more sought unsuccessfully to persuade his wife to return to him.

Appellant arrived at deceased's house around 11:00 p. m., June 30. The evidence was conflicting, but there was some testimony that four of deceased's children were asleep in the living room at the time. Deceased's eldest child, Rosalinda, was awake in a darkened bedroom of the house. Jane Rivera arrived at deceased's house shortly after appellant but left fifteen minutes later after "patting down" her brother and ascertaining that he was unarmed. Rivera testified that appellant was speaking softly and pleading with his wife to come back to him. Moments after Rivera left, Rosalinda Gamboa testified she heard four gunshots. She stepped quickly to a place in the dining room where she could see her uncle, appellant herein, placing a gun in his pocket. She could not see her mother from this position, nor could she remember if anyone beside her brothers and sisters, her mother, and appellant's wife were in the living room at the time. She testified that appellant then ripped the telephone off the wall and

left the house. In the living room, both Maria and Minnie Gamboa were found dead of gunshot wounds.

Around 11:30 p. m., appellant returned to the house of his sister, Jane Rivera, who noticed for the first time that appellant had a gun. Appellant gathered all his children and placed them in a truck he had stolen and departed for Colorado. He was apprehended a short time later.

At the trial, the witness Rosalinda. Gamboa was unable to identify the .22 caliber pistol introduced into evidence as the pistol she saw her uncle placing in his pocket on the night of the shootings. She could say only that the pistol she saw her uncle placing in his pocket had a white handle and a black barrel, like the one in evidence, but that her mother also kept a similar-looking pistol in the house. The witness Rivera testified that if appellant had had a gun prior to 11:30 p. m. on the date in question, she would have noticed it. Appellant himself testified that the pistol in evidence resembled a pistol he had owned, but he could not be sure if it was the same one. Randy Sillivan, a ballistics expert, testified that the fatal bullets probably came from a .22, but that he had been unable to determine that the bullets had come from the weapon in evidence.

The evidence against appellant was thus circumstantial. While the circumstances adduced strongly suggested his guilt, there was no direct evidence of the factum probandum. No one saw appellant fire the fatal shots. Nor was there direct evidence that the bullet which killed the deceased came from the weapon later taken from appellant. Under such circumstances, Texas law requires that a charge on circumstantial evidence be given. 4 Branch's Ann. P.C., 2d ed., Sec. 2049, p. 357. The State contends, however, that the facts are in such close juxtaposition that they amount to direct evidence and therefore a charge on circumstantial evidence is not needed.

On the basis of the record before us, we do not think the facts were in such close juxtaposition to the main fact to be proved as to be equivalent to direct testimony obviating the need for a charge on circumstantial evidence. *Farris v. State,* 496 S.W.2d 55 (Tex.Cr.App.1973).

The judgment is reversed and the cause remanded.

DOUGLAS, Judge (dissenting).

The majority reverses this conviction because the court did not instruct the jury that this was a case depending upon circumstantial evidence.

The court instructed the jury that before it could convict it must find beyond a reasonable doubt that appellant with malice aforethought unlawfully and voluntarily killed Minnie Gamboa with a gun. The court also instructed the jury "[u]nless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant."

The court charged the jury that "the defendant is presumed to be innocent until his guilt is established by legal evidence beyond a reasonable doubt, and in case you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him. You are the exclusive judges of the facts proved, of the credibility of the witnesses and the weight to be given their testimony. . . ."

In the last few years a charge on circumstantial evidence has been required by this Court more than ever before. Now it appears that the majority considers a circumstantial evidence charge sacrosanct unless an eyewitness testifies to every element of the case. Would the majority now hold in a murder case that unless an eyewitness testifies that he saw the bullet fired by a defendant hit the deceased a charge on circumstantial evidence must be given?

Jurors of today are usually educated. They are able to consider the evidence such as in this case without the judge having to tell them that no one saw appellant pull the trigger.

Unless the failure to give a charge would cause a different result, the error, if any, is harmless. Let us look to the testimony in this case to see if the giving of a charge on circumstantial evidence would have caused the jury to have reached a different result and found the appellant not guilty.

The victim alleged in the indictment was Minnie Gamboa, the wife of appellant's brother. Maria Gamboa, appellant's wife, was killed in the same room at the same time by three shots from a .22 caliber gun. Minnie Gamboa was talking over the telephone at the time she was shot. Appellant put a pistol in his pocket immediately after the last shot was fired. Two small children were sleeping in the room where the two women were killed. There was no evidence of a struggle on the part of the women. No weapon was found in the room.

Appellant and his wife, Maria, had five children. Minnie Gamboa and Maria and her children went to a dance and did not return until around two o'clock in the morning. Appellant and Maria argued about this and separated June 14, 1969. Maria and her children went to live with Minnie. A few days later, appellant, with Maria's permission, took the children to live with him.

Prior to the shooting, appellant went to Hermann Hospital because of pain from old injuries to his back. On June 30, appellant, without being discharged, covered his face with a paper and left the hospital. He put padding and paper in his bed to make it appear that he was in it. A nurse saw him leaving and asked him to return to get a release. He refused. He went to his sister's house and got his children and then with his niece and a nephew started to get ready for a trip to Colorado. His children stayed at the house and he went to the home of Minnie where Maria was staying.

Janie Rivera, appellant's sister, was called to the house by Minnie. Janie arrived at about 10:55 p. m. Appellant was urging Maria to come back to him. She refused. Janie Rivera left to go to work a few minutes later. Rosalinda Gamboa, the then eleven-year-old daughter of Minnie, was awake in the bedroom waiting to take a bath. She heard appellant walking and talking to her Aunt Maria in the living room. She then heard a shot and immediately jumped up and ran to where she could see into the living room. On the way she heard several shots. Immediately after the shots were fired, she saw her Uncle Manuel, appellant, putting a gun in his pocket. Her mother was sitting in a chair. He then started to leave but he turned, came back, pulled the telephone cord and receiver loose and then left.

About six blocks away from the house, appellant robbed William Thompson of a truck at gun point. This was a McCane-Sondock, a burglar alarm company truck, equipped with a two-way radio. Appellant's children arrived at Janie Rivera's house in a taxicab just ahead of appellant. He took the children in the truck and said that he going to Colorado. Appellant ran a roadblock that officers had set up near Stafford. Officers pursued him and shot the tires of the truck. Appellant stopped and let all of the children go except one who was three years of age. He abandoned the truck near Sugar Land. A Dodge Dart belonging to T. C. Rosell, Jr., which was stolen in Sugar Land during the early morning hours of July 1, 1969, was recovered near the Rivera residence in Houston. Appellant returned to the Rivera home at about 4:00 a. m. and threatened Janie Flores, daughter of Mrs. Rivera, with a pistol. Janie Flores called the police. When appellant was arrested that night he had a fully loaded .22 caliber pistol and twenty-six rounds of ammunition.

Dr. Joseph A. Jachimczyk, chief medical examiner of Harris County whose qualifications were stipulated, testified that Minnie Gamboa and Maria Gamboa each died of three .22 caliber gunshot wounds to the head. He related that the shots in the head of Minnie Gamboa were fired at a distance of approximately four inches or less. The shots that killed Maria Gamboa were fired

from a distance of about four inches to twenty inches.

The pistol taken from appellant at the time of his arrest was apparently an inexpensive or inferior type. Ballistics tests run on the slugs found in the house of the deceased were of little or no evidentiary value.

Appellant testified that he did not remember leaving the hospital and going to Minnie's house on Sherman Street or seeing the truck. He stated that he did not remember anything until after he was locked up. There was no issue of self defense or accident. There is no showing that anyone but the two women who were killed, the small children and appellant were in the room when the fatal shots were fired.

Would the jury have reached a different result if the court had charged that no one saw appellant pull the trigger and that there was no direct evidence of the killing? The jury knew what the testimony was and did not have to be so told by the court. Jurors should not be considered stupid. The court instructed the jury that it must believe beyond a reasonable doubt that appellant shot and killed Minnie Gamboa. From the evidence in this case there is no reasonable probability that someone other than appellant killed Minnie Gamboa.

Where the facts are in such close juxtaposition as to amount to direct evidence, no charge on direct evidence has been required. See *Eason v. State,* 423 S.W.2d 315 (Tex.Cr.App.1968). Where facts are in such close relation to each other as to amount to direct evidence, no charge on circumstantial evidence is required. *Riggins v. State,* 468 S.W.2d 841 (Tex.Cr.App.1971).

When there is no reasonable suggestion that anyone else could have committed the murder of Minnie Gamboa at a distance of four inches from her head except appellant, why does the majority reverse this conviction?

The Legislature has provided this Court should not reverse a conviction because of errors in a court's charge unless the error was harmful. See Articles 36.16 through 36.19, V.A.C.C.P. This Court should follow that mandate.

It should take at least something of substance to reverse a conviction. Mark me dissenting to reversal on such a frivolous, far-fetched ground.

The judgment should be affirmed.

MORRISON, Judge (dissenting).

The record as a whole, including an antecedent argument, presence of the appellant at the scene of the murder, possession of a gun by appellant immediately after shots were heard, and subsequent flight by appellant not mentioned in the majority opinion, shows that the facts in this case are of a positive character. At least, the facts and circumstances are of such a character as to place the appellant in such close proximity to the main fact as to render a charge on circumstantial evidence unnecessary. See *Allen v. State,* 36 Tex.Cr.R. 381, 37 S.W. 429.

I dissent to the reversal of this conviction.