Gerald **WILLIAMS**, Appellant,

v.

**The STATE of Texas**, Appellee.

No. 53528.

Court of Criminal Appeals of Texas, En Banc.

May 24, 1978.

Richard Thornton, Galveston, for appellant.

Ronald L. Wilson, Dist. Atty. and Jack C. Brock, Asst. Dist. Atty., Galveston, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DALLY, Judge.

This is an appeal from a conviction for the offense of murder; the punishment is imprisonment for 50 years.

A written statement, which the appellant made while in custody and out of the presence of his retained counsel, was admitted in evidence. The appellant urges that the trial court committed reversible error in admitting that statement in evidence, because he did not waive his right to have counsel present when the statement was made, and therefore the statement was obtained in violation of constitutional requirements of the Sixth Amendment to the Constitution of the United States as interpreted in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

On December 10, 1974, the body of Celestine Williams, the appellant's wife, was found in their home in Texas City. On December 11th, the appellant learned that he had been charged with the murder of his wife and he contacted Richard Thornton, an attorney. Thornton ascertained that a warrant for the arrest of the appellant had been issued; the appellant, accompanied by Thornton, surrendered himself in the Sheriff's office in Galveston. Thornton told the Sheriff's Chief Deputy, W. J. Whitburn, and other officers who were present that he represented the appellant and that he did not want the appellant, who he said was ill and on medication, interrogated unless he was present to represent him. There is no evidence that the officers agreed to Thornton's demand. Thornton did not talk to any Texas City officers.

At 11:55 a. m. on December 11th, Texas City Police Sergeant Deril Oliver took cus-

tody of the appellant from the Galveston County Sheriff's office. Oliver advised the appellant of his rights as required by Art. 38.22, V.A.C.C.P. and *Miranda v. Arizona,* supra. The appellant was taken by Oliver to Texas City, where they appeared before a magistrate at 12:50 p. m. The magistrate advised the appellant of his rights as provided by Art. 15.17, V.A.C.C.P. At 1:03 p. m. the appellant was again advised of his rights by Oliver and signed a form acknowledging the same. Oliver testified that after the appellant read and signed the form he was questioned until 1:45 p. m. Oliver stated that because the appellant was emotionally upset and crying he was placed in a cell. At 5:00 p. m. the appellant was taken to Oliver's office and Oliver resumed questioning the appellant concerning the death of his wife. Oliver personally typed the appellant's statement as appellant answered Oliver's questions. When the typing was completed, Oliver read the appellant's statement to him, including the advice concerning the constitutional rights printed at the top. Oliver also gave the appellant an opportunity to read the statement. The appellant then signed the statement at 7:05 p. m.

Appellant testified that after he was advised of his rights by the magistrate he was taken to a room at the Texas City police station and interrogated by two policemen. Appellant stated that he told the policemen that his attorney did not want him to make a statement unless the attorney was present. He said he asked to call his attorney but the policemen would not let him and told him that his attorney would not mind if he signed a statement. Appellant testified that one officer grabbed him by the shirt collar and pulled him up. He said he was frightened and crying and that he signed the statement after "they kept harassing me." Appellant said the officer told him he would be there all night until he made a statement and that he could not have his medication. He stated that the officers did not hit him or promise him anything but that he signed the statement because he was being harassed.

Sgt. Oliver testified that he was informed by officers in the Sheriff's office that the appellant was represented by Thornton. Oliver stated that at no time did the appellant request to see his attorney or ask to use the telephone, and that he never mentioned his medication. Oliver said the appellant discussed the case freely with him and appeared to be coherent and normal. Oliver testified that he did not strike or abuse the appellant in any manner, and that he did not threaten the appellant or promise him anything. Sgt. Stanley, who was identified by the appellant as the other officer present during the questioning, testified that he was not present when a statement was taken from the appellant. He stated that he never grabbed the appellant by the shirt collar or told him he had to make a statement.

The trial court made written findings of fact that the appellant had been advised of his constitutional rights prior to giving the police his statement. The court found that appellant's confession was not obtained by threats, persuasion, compulsion, intimidation, violence, or promises, and that the statement was the appellant's free and voluntary act. These findings are supported by the evidence. The appellant argues that his right to cut off questioning was not "scrupulously honored" by the police and that he did not waive his right to have his attorney present during questioning. Appellant cites and relies upon *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); and *Hearne v. State,* 534 S.W.2d 703 (Tex. Cr.App.1976).

In *Michigan v. Mosley,* supra, Mosley was arrested in connection with several robberies and advised of his rights in accordance with *Miranda v. Arizona,* supra. Mosley acknowledged that he understood his rights, told the detective that he did not want to answer any questions about the robberies, and the interrogation was stopped. Over two hours later another detective again advised Mosley of his rights and questioned him about an unrelated murder. Mosley then made statements that were used

against him in the murder trial. The Supreme Court discussed the portion of the *Miranda* opinion that states that "the interrogation must cease" when the person in custody indicates that "he wishes to remain silent." The Supreme Court declined to interpret this passage either to require a blanket prohibition against further interrogation once an accused indicates he wishes to remain silent or to allow the continuation of custodial interrogation after a momentary cessation. The Court concluded that "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'" The Court held that the second detective's questioning about an unrelated homicide was consistent with a reasonable interpretation of Mosley's earlier refusal to answer any questions about the robberies, and that the statements were admissible.

The fact situation in the present case is quite different from that presented in *Michigan v. Mosley*, supra. Appellant's testimony is the only evidence that appellant told Oliver he did not want to talk with him. Attorney Thornton testified that he told two Sheriff's officers that he did not want the appellant questioned without him being present, but the record does not reflect that the Sheriff's officers conveyed the information to Oliver, a Texas City policeman. Oliver, on cross-examination by Thornton, testified as follows:

"Q. And he (appellant) did not tell you he didn't want to make a statement?

"A. At no time did he say he didn't want to make a statement.

"Q. Just voluntarily came out with it?

"A. He was discussing the case freely, yes, sir."

The appellant's lengthy confession is two and a half pages long. Approximately one page directly concerns the events on the day of the shooting; the remainder of his statement tells about injuries the appellant suffered while working, his relationship with his wife, the deceased, and his attempts to commit suicide. This evidence strongly corroborates Oliver's testimony that the appellant freely discussed the case.

■ It is clear that where the facts are in dispute on the voluntariness and admissibility of a confession, the trial judge, as the trier of the facts, can accept or reject all or any part of the testimony of any witness, including a defendant. *McKittrick v. State*, 541 S.W.2d 177 (Tex.Cr.App.1976), and cases cited therein. We hold that there was sufficient evidence for the trial court to conclude that the appellant waived his right to remain silent and to admit the statement in evidence.

In *Hearne v. State*, supra, the evidence was uncontradicted, and the officer freely admitted that he persuaded the defendant "bit by bit to change his mind" and talk with him after the defendant had told the officer he did not want to talk with him. The *Hearne* decision is not controlling under the facts of this case.

The Supreme Court recently discussed the issue of whether an accused waived his right to have his attorney present during questioning by police officers in *Brewer v. Williams*, supra. Williams was arrested in Davenport, Iowa for abducting a ten-year-old girl in Des Moines, Iowa. Two attorneys advised Williams not to make any statements until after he consulted with his attorney upon being returned to Des Moines. The police officers who were to transport Williams back to Des Moines by automobile *agreed* not to question him during the trip. Williams expressed no willingness to be interrogated without his attorney being present and told the officers several times that he would tell the whole story after seeing his Des Moines lawyer. One of the officers, who knew Williams was a former mental patient and deeply religious, obtained incriminating statements and evidence by stating to him during the trip that he felt they should stop and locate the girl's body because her parents were entitled to a Christian burial for the girl, who was taken away from them on Christmas eve. The Supreme Court held that the policeman's "Christian burial speech" was

tantamount to interrogation and was designed to obtain incriminating statements after Williams had indicated that he did not want to make any statements until he had conferred with his lawyer in Des Moines.

In the case at bar the appellant conferred with his attorney prior to surrendering himself. Attorney Thornton told the Sheriff's officers that he did not want appellant interrogated without him present. The record does not reflect whether the Sheriff's officers relayed this information to Sgt. Oliver. Appellant testified that he told Oliver that he did not want to make any statements without his attorney present. He also testified that during the questioning he asked to call his attorney but was refused. Oliver disputed this testimony. He admitted that he knew the appellant had an attorney but stated that after the appellant was advised of his rights numerous times he never requested to see his lawyer or to use the telephone.

*Brewer v. Williams* does not hold that an accused cannot waive his right to have counsel present during questioning once he is represented by counsel. The Court specifically said that it did not hold that under the circumstances of the case Williams *could not* have waived his rights without notice to counsel; it only held that Williams *did not* waive his right to have counsel present during questioning. The fact that an attorney advises his client to remain silent or not make any statement without him present does not mean that the accused can never thereafter intelligently and knowingly waive those rights. *Caraway v. State*, 489 S.W.2d 106 (Tex.Cr.App. 1971). See also *Self v. State*, 513 S.W.2d 832 (Tex.Cr.App.1974), and *McKittrick v. State*, supra.

There is no doubt that appellant knew he had the right to have his attorney present during questioning, having been so advised at least four times, including once by a magistrate. Indeed, he had conferred with his attorney prior to surrendering to the Sheriff. That there is no evidence the appellant explicitly waived his right to counsel does not preclude a finding that he

knowingly, intelligently, and voluntarily waived that right. *Moreno v. State*, 511 S.W.2d 273 (Tex.Cr.App.1974); *Thomas v. State*, 458 S.W.2d 817 (Tex.Cr.App.1970); *Easley v. State*, 448 S.W.2d 490 (Tex.Cr. App.1970). We conclude that under the totality of the circumstances the State has proven "an intentional relinquishment or abandonment of a known right" and that the appellant waived his right to remain silent and his right to have counsel present during questioning. The Court did not err in admitting appellant's confession into evidence.

Appellant contends the court erred in failing to submit his timely requested charge on the law of circumstantial evidence. The deceased was found dead by several relatives in the bedroom of her home. The autopsy revealed that she died at approximately 5:00 p. m. on December 9, 1974. There were at least five separate bullet wounds in her body caused by .22 caliber bullets. The cause of death was a bullet wound to the heart. A .22 caliber revolver was found wrapped inside a blue jacket on the dresser in the bedroom. The revolver contained six empty cartridges.

The appellant not only gave a statement to Oliver but he also testified in his own behalf at the trial. Omitting parts not necessary to our discussion, appellant's statement reads as follows:

"On Monday the 9th day of December 1974 I picked her (deceased) up from St. Mary's where she works and she rode to the house with me. She was going to get some things for her daughter and while we were at the house we looked at some bills and was talking. I tried to talk her into coming back home and she got mad and told me to stop pressuring her about coming home. We were in the master bedroom when the phone rang and she got up to answer it. I saw her take her pistol out of the night stand drawer. I wasn't sure what she was going to do until she pointed it at me and pulled the trigger. The gun snapped and did not fire and at this time I began struggling with her. I don't remember exactly what

happened after that *but I do remember I layed the pistol down on a blue jacket which was on the dresser.* I got my medicine and got into my car and drove to Houston. I left a note on the coffee table which I wrote on Saturday the 7th day of December. I put a lot of reasons in the note and I even mentioned about once having the crabs which we had a big fuss about. I wrote one other note but then I tore it up. I had been trying to get her to come back to me but she would always get mad when I mentioned it.

"When I arrived in Houston *after the shooting* I stayed for awhile and then my brother Wilbur brought me back to Galveston where I turned my self in to the Sheriffs Office. The note I wrote Saturday the 7th of December is the same one the police found at my home and *the pistol used* belonged to my wife and it was given her by her ex-husband who is a policeman in Galveston.

\* \* \* \* \* \*

"The next morning (December 9) I picked her up and drove her to work and then I picked her up from work and took her to my house. A little while later is *when the trouble happened. I think the trouble happened around 5:00 p. m. but I am really not sure.*" (Emphasis added.)

Appellant testified in his own behalf at the guilt-innocence phase of the trial. On direct examination appellant testified that the deceased pointed the pistol at him and pulled the trigger but that the gun did not go off. He stated, "I remember getting to her and she and I started tussling with the gun and after that I don't know what happened." Appellant said that he did not recall shooting his wife. He said that if he did shoot her, he did so accidentally. During cross-examination the appellant testified concerning his jealousy towards the deceased. The prosecutor then asked the appellant, "Is that why you shot her?" Appellant replied, "No, that's not why I shot her."

A charge on circumstantial evidence need not be given where there is evidence of an admission of the accused

that he killed the deceased. *Knight v. State,* 538 S.W.2d 101 (Tex.Cr.App.1975); *Sloan v. State,* 515 S.W.2d 913 (Tex.Cr.App. 1974); *Hogan v. State,* 496 S.W.2d 594 (Tex. Cr.App.1973); *Corbett v. State,* 493 S.W.2d 940 (Tex.Cr.App.1973). Direct testimony from any source that the accused was an actor in bringing about the death of the deceased characterizes the case as one of direct and not circumstantial evidence. *Smith v. State,* 470 S.W.2d 696 (Tex.Cr.App. 1971). Where the only element proved by circumstantial evidence is that of intent, no charge upon circumstantial evidence is required. *Smith v. State,* supra. While the appellant's confession may not be a full admission of the offense of murder, when appellant's written statement and his testimony at trial are considered together, we find that a charge on circumstantial evidence was not required. *Steel v. State,* 459 S.W.2d 649 (Tex.Cr.App.1970); *Hogan v. State,* supra.

This case may be distinguished from *Gamboa v. State,* 528 S.W.2d 247 (Tex.Cr. App.1975), and *Ellis v. State,* 551 S.W.2d 407 (Tex.Cr.App.1977). *Gamboa* did not involve a confession of the defendant's participation in the offense. In *Ellis,* the defendant was charged as a party to the offense, under V.T.C.A. Penal Code, Sec. 7.02, and in his written statement did not admit doing any acts that would have made him criminally responsible for the conduct of the actual killer.

The court did not err in refusing to submit to the jury a charge on circumstantial evidence.

Appellant contends the trial court erred in sustaining the State's objection to testimony concerning conversations related to Oliver by Galveston County Sheriff's officers. Appellant complains of the following ruling by the trial court during his cross-examination of Oliver:

"Q. [By Mr. Thornton]: The Galveston County Sheriff's Department had informed you that he had been surrendered by me with me as his counsel?

"THE STATE: Your Honor, at this point, we are going to object to what may have been told to Sgt. Oliver as being hearsay.

"THE COURT: Sustain the objection.

"MR. THORNTON: Note our exception, Your Honor. I think I have already had—

"THE COURT: You may cross-examine him, Mr. Thornton.

"MR. THORNTON: All right."

Questions by Mr. Thornton continued:

"Q. Anyway, on the 11th of December of 1974, at about eleven o'clock a. m., you knew that the defendant had been voluntarily surrendered to the Galveston County Sheriff's Department?

"THE STATE: Your Honor, once again, we object to that as only calling for a hearsay answer which he has previously stated.

"THE COURT: Sustain the objection.

"MR. THORNTON: Note our exception, Your Honor.

"Hearsay to whom, Judge?

"THE COURT: Sir, I sustain the objection."

■ Appellant admits in his brief that "Ultimately, on extended cross-examination, the witness finally admitted the truth of these matters." Where evidence is excluded, but the same testimony is later admitted, this Court has consistently held such exclusion does not require reversal. *Hays v. State*, 480 S.W.2d 635 (Tex.Cr.App.1972); *Preston v. State*, 481 S.W.2d 408 (Tex.Cr. App.1972). Even if appellant's argument and theory are correct, the error, if any, in sustaining the State's objection was harmless.

Appellant contends the court erred in allowing the State to cross-examine the appellant's father with "have you heard" questions during the punishment phase of the trial. Specifically, appellant is complaining of the following question by the State:

"Q. Let me ask you, sir, whether or not you have heard that on June the 14th, 1967, your son was arrested for the offense of assault with intent to murder?

"MR. THORNTON: Your Honor, we object to that question based upon the Hill's case.

"THE COURT: Based upon what?

"MR. THORNTON: Hill v. State, your Honor. There has been no question related to this defendant about the reputation inviting any matter to be brought into evidence, your Honor, such as this to invite the final conviction of any felony.

"THE STATE: Your Honor, it's the contention of the State that the defendant has opened and placed his character and reputation by having the father testify that he has been a good man; that he has given him no trouble. We should be able to cross-examine this particular witness by mentioning any prior arrests.

"THE COURT: Overrule the objection.

"MR. THORNTON: Note our exception, Your Honor."

Thereafter, the appellant's father was permitted to answer the question and he stated that he had heard of the incident.

During direct examination the appellant's father testified that appellant had never been convicted of a felony offense and asked the jury to grant his son probation. Appellant's counsel also brought out the following testimony on direct examination:

"Q. Mr. Williams, has Gerald been a good boy up to this time?

"A. Yes, he has never given me any trouble.

"Q. Never given you and your wife any trouble?

"A. Never has.

"Q. Has he obeyed you, generally?

"A. Yes.

"Q. Mr. Williams, you know quite a bit about Gerald Williams, don't you?

"A. I do."

■ The testimony elicited on direct examination by appellant in the case is almost

identical to the testimony in *Childs v. State*, 491 S.W.2d 907 (Tex.Cr.App.1973). In *Childs* the defendant's father was asked, "Q. And has his conduct been good since he has been there while he has been there at home? A. Really has." In analyzing this testimony the Court said:

"True, appellant's counsel did not use the 'magic words,' does your son have a general reputation of being a peaceful and law abiding citizen in the community in which he resides, in questioning the witness. However, an examination of the record clearly indicates that the entire tenor of the elder Childs' testimony was geared toward persuading the jury to grant appellant probation by showing them his good character and law abiding habits. Appellant may not have a witness testify about his good character traits but avoid 'placing his reputation in evidence' simply by not specifically asking whether appellant enjoyed a good reputation in the community."

Cf. *Els v. State*, 525 S.W.2d 11 (Tex.Cr.App. 1975). The Court did not err in permitting the cross-examination.

■ Appellant also argues under this ground of error that the State's question was so framed as to imply that the appellant had committed the offense; however, no objection was voiced on this complaint in the trial court. In order to preserve error, if any, on appeal, appellant's objection must be the same as that raised in the trial court. See *Elizaldi v. State*, 519 S.W.2d 881 (Tex. Cr.App.1975); *Esquivel v. State*, 506 S.W.2d 613 (Tex.Cr.App.1974). Moreover, the question was properly framed.

■ Appellant's last contention is that "[t]he Trial Court erred in his actions against Defendant's counsel with reference to the blackboard and the attempted use thereof by defense counsel in front of the jury." Appellant does not point out where in the record this alleged error occurred. He makes no argument in support of the ground and cites no authority. This ground is not in compliance with Article 40.09, Sec. 9, V.A.C.C.P.; nothing is presented for review.

The judgment is affirmed.

ROBERTS, Judge, dissenting.

Although I concur with the dissenting opinion of my Brother Phillips, I also dissent from the majority's disposition of the appellant's contention that he was entitled to a charge on circumstantial evidence.

It is well settled that direct evidence is that evidence which directly demonstrates the main fact to be proved. Circumstantial evidence, on the other hand, is that evidence which directly proves a secondary fact which, by logical inference, demonstrates the main fact. *Crawford v. State*, 502 S.W.2d 768 (Tex.Cr.App.1973). In *Ransonette v. State*, 550 S.W.2d 36, 42 (Tex.Cr. App.1976) (Opinion on the Appellant's Motion for Rehearing), this Court stated:

"A charge on circumstantial evidence is required only where the evidence of the main fact essential to guilt is purely and entirely circumstantial. See· e. g. *Wilson v. State*, 154 Tex.Cr.R. 59, 225 S.W.2d 173 (1949). A charge on circumstantial evidence is necessary only when the State's case depends entirely upon circumstances for conviction. See e. g. *Nailing v. State*, 152 Tex.Cr.R. 161, 211 S.W.2d 757 (1948); *Wells v. State*, 134 Tex.Cr.R. 412, 115 S.W.2d 658 (1938). An instruction as to circumstantial evidence need not be given where the State relies only in part on circumstantial evidence, *Lawler v. State*, 110 Tex.Cr.R. 460, 9 S.W.2d 259 (1927); *Coleman v. State*, 90 Tex.Cr.R. 297, 235 S.W. 898 (1921), even though the State relies on a chain of circumstances that may be considered the major part of the evidence on which the State relies for conviction. *Dodd v. State*, 149 Tex.Cr.R. 156, 192 S.W.2d 263 (1946). See 31 Tex. Jur.2d 682–683, Instructions, Sec. 123; *Morris v. State*, 402 S.W.2d 161 (Tex.Cr. App.1966); *Russell v. State*, 396 S.W.2d 117 (Tex.Cr.App.1965)." *Id.* at 43.

In the present case, the main fact to be proved was that the appellant murdered his wife. The only evidence, aside from the appellant's *inadmissible* confession, which can even *arguably* be classified as direct

evidence, is contained in the following portion of the majority opinion:

"Appellant testified in his own behalf at the guilt-innocence phase of the trial. On direct examination appellant testified that the deceased pointed the pistol at him and pulled the trigger but that the gun did not go off. He stated, 'I remember getting to her and she and I started tussling with the gun and after that I don't know what happened.' Appellant said that he did not recall shooting his wife. He said that if he did shoot her, he did so accidentally. During cross-examination the appellant testified concerning his jealousy towards the deceased. The prosecutor then asked the appellant, 'Is that why you shot her?' Appellant replied, 'No, that's not why I shot her.'"

The majority has apparently classified the foregoing as direct evidence. This was illogical and erroneous.

The appellant's statement that he remembered getting to his wife and "tussling" with the gun and that after that he did not "know what happened" was direct evidence that there was an altercation between the appellant and his wife; it is not direct evidence that the appellant murdered his wife. Furthermore, the appellant's statement that he did not remember what happened after the altercation is not direct evidence of anything except a poor memory.

Moreover, the appellant's statement that if he did shoot his wife, it was accidental is not direct evidence of anything. In light of the appellant's testimony that he could not remember shooting his wife, this statement by the appellant was conjecture at best. Likewise, the appellant's testimony "concerning his jealousy towards the deceased" is not direct evidence that the appellant shot his wife.

The final aspect of the appellant's testimony which the majority relies upon is the prosecutor's question, "Is that why you shot her?" and the appellant's response, "No, that's not why I shot her." Immediately before this question and answer, the following occurred:

"Q Didn't you think, during this period of time, that she was going out with somebody else?

"A Like I stated, I was jealous of her.

"Q The question was: Did you not think during this period of time, that she was going out with somebody else?

"A Yes.

"Q You still think at this time she was going out with somebody else?

"A I don't know."

The prosecutor's question is ambiguous. It can be construed in either of two ways. First, the question can be construed to be two questions in one: (1) Did the appellant shoot his wife; and (2) Did he shoot his wife because he thought she was going out with another man. Second, the question can be construed to assume that the appellant shot his wife while asking for the reason he shot her. In either situation, the appellant's answer can hardly be construed to be an admission that he shot his wife. I cannot conclude that the appellant's answer to the prosecutor's question is direct evidence of the main fact to be proved. Nor can I conclude that all of the foregoing facts are direct evidence that the appellant murdered his wife. At best, they are facts from which the jury could have inferred that the appellant murdered his wife. Beyond any doubt, these facts were circumstantial evidence, not direct evidence.

Therefore, it becomes apparent that if the appellant's confession had been excluded, there was a complete absence of direct evidence that the appellant murdered his wife. A circumstantial evidence charge was thus required and the trial judge committed reversible error by failing to submit the appellant's requested charge on the law of circumstantial evidence to the jury.

For the foregoing reasons, I dissent.

PHILLIPS, Judge, dissenting.

The majority opinion finds that the appellant had waived his Fifth Amendment right to remain silent and his Sixth Amendment right to have counsel present during questioning. I cannot agree.

The testimony reveals that appellant voluntarily surrendered to the Galveston County Sheriff's Department accompanied by his attorney, Mr. Richard Thornton. At that time, Mr. Thornton advised Captain Whitburn and other officers present that he represented the appellant. Thornton further informed the officers that appellant was ill and under several types of medication. He told the officers that he did not want the appellant interrogated unless he was present during the questioning. That the officers agreed to this demand is supported by Thornton's own testimony and the fact that no Galveston law enforcement officer attempted to question the appellant.

Appellant was later transferred to the Texas City Police Department by Sgt. Deril Oliver. Oliver testified that he was aware that appellant was being represented by Mr. Thornton. He further stated that appellant had not at any time requested to see his attorney or use the telephone. Appellant, on the other hand, testified that he had told Sgt. Oliver that his attorney did not want him to make a statement unless the attorney was present. He stated that the officers would not allow him to call Mr. Thornton and that one of the officers had grabbed him by the collar and pulled him out of his chair. He did say that the officers did not strike him or promise him anything, but that the officers told the appellant he would be there all night without his medication if he did not make a statement.

Oliver and appellant both testified that when Oliver first interrogated the appellant he was emotionally upset to the point that he was crying. Oliver testified that he had appellant taken back to his cell for four hours before the questioning continued. Appellant, however, stated that the interrogation had been continuous up until the time he signed the statement.

There can be no serious doubt in the present case that Officer Oliver deliberately set out to elicit incriminating information from appellant. Oliver was fully aware before he left Galveston and during every minute of the interrogation that appellant was being represented by Mr. Thornton. Yet in the face of this knowledge, Oliver admitted that he continued to interrogate the appellant. His reasons can best be illustrated from his testimony on cross examination by Mr. Thornton:

"Q Do you recall me asking you why in the world you were taking a statement from a person you knew I was representing?

A Yes sir.

Q Yes, your answer wasn't your answer to the effect that you had a job to do and you were going to do it regardless?

A I think I said something like I was obligated to make the best possible case and I am obligated to use every illegal means available to do it.

Q Regardless of whether he had an attorney or anything else, is that correct?

A I could care less if he had two lawyers.

Q That's right, you could care less?

A That's exactly right."

This indicates a clear disregard for the appellant's right to have his counsel present during the interrogation.

In *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the United States Supreme Court, in comparing that case to *Massiah v. U. S.*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1963), stated that " . . . the clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him."

Of course, the majority in the instant case recognized appellant's right to have counsel present, but felt that appellant had waived that right. The burden of proving waiver is with the State. And, that burden is onerous as this Court stated in *McKittrick v. State*, 541 S.W.2d 177, 183 (Tex.Cr. App.1976):

"*Miranda,* of course, teaches that a heavy burden rests upon the prosecution to prove that a person in custody 'knowingly and intelligently' waived his privilege against self-incrimination and his right to retained or appointed counsel, 384 U.S. at 475, 86 S.Ct. at 1628.

The determination of whether there has been such an intelligent waiver must de-

pend upon the particular facts in each case, including the background, experience, and conduct of the accused. See *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Thus, courts must approach the question of waiver in each case on an ad hoc basis. *Narro v. United States,* 370 F.2d 329, 330 (5th Cir. 1966). See also *McCandless v. State,* 425 S.W.2d 636, 640 (Tex.Cr.App. 1968)."

The record reflects conflicting testimony between Oliver and appellant as to whether appellant had asserted his right to counsel. In face of this conflicting testimony plus the officer's knowledge that appellant was represented and Oliver's statements that he "could care less" if appellant was represented pointed up the fact that there was *no waiver* of appellant's Sixth Amendment right to counsel.

The majority seems to rely on the fact that the record does not show that the agreement not to interrogate appellant made by the Galveston County Sheriff's Office was communicated to Sgt. Oliver. On the other hand, the record does not show that the agreement was not relayed to Oliver.

If the agreement had been relayed to Oliver, we are faced with a factual situation almost identical to that in *Brewer,* where Mr. Justice Stevens stated in his concurrence:

> "If, in the long run, we are seriously concerned about the individual's effective representation by counsel, the State cannot be permitted to dishonor its promise to this lawyer."

If the agreement had not been communicated to Oliver, we are faced with a far more difficult question. Are we to allow law enforcement officials to circumvent an accused's Sixth Amendment right to counsel by shuffling him back and forth until he is in the hands of the an officer who is unaware of a prior commitment made to the accused's attorney? See *Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1964); *Massiah v. U. S.,* supra. Such a policy would effectively deny an attorney

the opportunity to stop interrogations unless he was present. That such a policy should not be adopted is graphically illustrated in a situation where the accused is under medication, is ill, or is in any way incapacitated to the point that he might not be able to continuously urge his right to counsel in the face of police interrogation. An attorney representing a client with this incapacity should be able to preclude any interrogation without his presence.

In the instant case, the appellant was under several types of medication and was emotionally distraught. Realizing his client's inability to assert his own constitutional rights, Mr. Thornton, the appellant's attorney, told the Galveston Police Officers that he did not want the appellant interrogated in his absence. The Galveston authorities acquiesced in this request.

In view of these circumstances, the State has not borne its burden of showing that the appellant's rights were "scrupulously honored", nor have they shown a waiver of the appellant's right to counsel. See *Hearne v. State,* 534 S.W.2d 703 (Tex.Cr. App.1976); *Jurek v. State,* 522 S.W.2d 934 (Tex.Cr.App.1975); *McKittrick v. State,* supra.

For these reasons, I respectfully dissent.

ONION, P. J., and ROBERTS and W. C. DAVIS, JJ., join.