**Ralph Michael JOHNSON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. 13–81–281–CR.**

Court of Appeals of Texas,
Corpus Christi.

Aug. 26, 1982.

Larry Watts, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before BISSETT, UTTER and KENNEDY, JJ.

## OPINION

BISSETT, Justice.

Ralph Michael Johnson, defendant (appellant), following a jury trial, was found guilty of the offense of murder (of John Geren). He was sentenced to confinement in the Texas Department of Corrections for a term of five years. The sufficiency of the evidence is not challenged in this appeal.

On July 30, 1978, the appellant, who was then seventeen years of age, John Geren (the deceased), and Mrs. Jill Randolph were at an apartment in Houston where the appellant resided. Geren, whose friends called him "Rooster," asked appellant to get something from his (Geren's) car. While he was gone, Geren and Randolph went into a bedroom, closed the door, took off their clothes and engaged in sexual intercourse. When appellant returned, he knocked on the door and said: "get out of the bedroom." About two minutes later he pounded on the door and told them "to get out." Geren replied: "wait a few minutes," and told him to leave him alone. Appellant then entered the bedroom and found Geren and Randolph "still in bed making love." Appellant walked out of the bedroom, returned two or three minutes later; he had a pistol in his hand, and said: "I mean it this time." Appellant then pointed the gun in the direction of Geren and Randolph, who told Geren to "get up ... he has a gun," whereupon Geren "jumped out of bed." Geren said to appellant: "shoot me, m——f——," and appellant, without further ado, shot him several times with a .38 caliber pistol. A medical examiner for Harris County testified that Geren's death was due to gunshot wounds of the abdomen, a bullet having entered the chest which perforated the abdominal organs.

Appellant gave a written statement, hereinafter sometimes called the "confession," to Detective R.L. Delony, of the Houston Police Department, following his arrest. He was eighteen years old at that time. His signature thereto was witnessed by two other persons. He admitted (in the statement) that he shot Geren with a "38" pistol which "holds five bullets and I shot until it didn't shoot no more." The confession, save and except the statement "and he got up and came at me like he was going to rip my head off," was offered by the State and admitted into evidence without objection from appellant. The excluded portion of the confession, quoted above, was introduced in evidence by appellant's counsel. Thus, the confession in its entirety was before the jury.

The appellant contends that the court erred in admitting his written statement into evidence "for the reason that it was a statement involuntarily made" by him.

It is uncontradicted that appellant received the "*Miranda* Warning" from the Houston Police on three different occasions. He was first warned of his constitutional rights relating to the making of a statement when he was arrested. Then, immediately upon his being taken to Police Headquarters, he was again warned by Detective Delony to whom appellant gave the statement. Delony read him the rights from the "blue card" which had been given to him by the District Attorney's office and appellant told Delony at that time that the warning was the same warning that the arresting officers had given him earlier. Delony told appellant that he did not have to make a statement but could remain silent. Appellant, according to Delony, seemed to understand what he had read to him and when he asked if he had any questions, replied: "no questions." Appellant then made a statement to Delony, who had it reduced to writing. Appellant signed it before two other witnesses. The statement at the very top thereof contains the following language:

"Prior to making this statement I have been warned by Detective R.L. Delony, the person to whom this statement is made, that:

1) I have the right to remain silent and not make any statement at all and any statement I make may and probably will be used against me at my trial;

2) Any statement I make may be used as evidence against me in court;

3) I have the right to have a lawyer present to advise me prior to and during any questioning;

4) If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning and;

5) I have the right to terminate the interview at any time.

Prior to and during the making of this statement I knowingly, intelligently and voluntarily waive the rights set out above and make the following voluntary statement:"

After appellant had made the statement, but before he signed the same, it was again read to him and this reading included the *Miranda* Warning as set out in the aforesaid statement.

The court held a pretrial hearing on the admissibility of this statement into evidence, pursuant to Tex.Code Crim.Proc. art. 38.22 § 6 (Vernon 1979). The only evidence offered was that of Detective Delony, who took the statement. In addition to what has already been said concerning the readings of the *Miranda* Warning to appellant, Delony testified that appellant told him that he understood them and wanted to tell what had happened. The statement was read to appellant, as already stated, and he told Delony that it was true. No threats nor promises were made to appellant, and, according to the State's witnesses, the appellant signed the statement willingly, appeared to be lucid at all times, and was aware of everything that was going on.

The trial court filed "Findings of Fact and Law." It found, inter alia, that appellant was warned of his rights relating to the making of a statement and, after having been so warned, knowingly waived such rights, prior to, and during the making of said statement. The court further found that such statement "was voluntarily given in accordance with all requirements of the Constitution and Statutes of the United States and the State of Texas, and, in particular, in accordance with the Rules of Criminal Procedure of the State of Texas and is admissible in evidence as a matter of law."

■ On the issue of admissibility of a statement, or confession, the court is the sole judge of the weight of the evidence and may believe or disbelieve all or any part of any witness' statement. *Hughes v. State,* 562 S.W.2d 857, 863 (Tex.Cr.App. 1978). We hold that the record amply supports the findings of the trial court.

■ The appellant further contends that the trial court erred "in failing to charge the jury on the issue of voluntariness of the statement." No objection was made by the appellant to the court's charge on this ground, nor did he request a special charge on the issue of voluntariness. Therefore, nothing is presented for review. *Tyra v. State,* 534 S.W.2d 695, 697 (Tex.Cr. App.1976); *King v. State,* 502 S.W.2d 795, 798 (Tex.Cr.App.1973). Even if the appellant had properly requested a special charge, the issue of voluntariness was not raised by the evidence and therefore a charge on that issue was not required.

Appellant testified in his own behalf. According to him, when he knocked on the bedroom door and told Geren to come and Geren did not do so, he got the pistol to frighten Geren. He further testified that he did not intend to shoot Geren when he went into the bedroom, but that when he opened the door "John hopped off the girl and came at me like he was going to rip my head off." He further testified that Geren had one hand behind him and he (appellant) did not know if he had something in it when he shot Geren. The trial court charged the jury on self-defense.

Appellant asserts:

"The Court erred by excluding testimony offered by Appellant purposed to show Appellant's background and limited abilities to perceive the nonviolent nature of heterosexual encounters which materially related to Appellant's perception of the danger against which he defended himself."

In support of such assertion, appellant offered the evidence of Harry Windham, a carpenter from the State of California, who testified that he had practically raised the appellant, who called him "grandfather." He had not seen appellant for several months prior to the killing. The court ruled that the witness' relation of details of appellant's prior life was not admissible but that he could testify with respect to appellant's mental abilities. He testified that appellant went to a trade school for the partially-retarded and detailed appellant's duties at the school and what he did while enrolled therein. He further testified that appellant was not as bright as other children and experienced trouble in performing simple tasks.

Other matters concerning appellant's prior life history, which were excluded by the trial court, appear in the record by a bill of exceptions. Counsel for appellant argues that the excluded testimony was material and relevant to "appellant's belief that it was immediately necessary to use force to defend himself." We do not agree.

We have carefully read the excluded testimony. The witness, in summary, stated: appellant, whose mother had been married four times, was a child of his mother's third marriage; he lived with his mother after she separated from his father; his mother had a drinking problem; she later married a man named Crimms, who, according to statements made to Windham by appellant and his sister, beat appellant on occasion and locked him in a closet "many times"; children at school would laugh at appellant and call him "dummy"; appellant came to live with Windham when he was about eight years old; he resided in the Windham home until he was seventeen years of age, when he moved to Houston; he was told not to "go in the street," but continually did so and when questioned would always reply: "I don't remember your telling me"; during a visit with his mother, she (the mother) told Windham that she whipped appellant with a chain because "I whipped him with a switch and it didn't work." While living with the Windhams, appellant, who was scared of mice and rats, told Windham that he had seen a mouse, which, according to his extended arms, would have been three feet in length; appellant would not play with other children, and when asked by Windham to "stand up to those boys," said to Windham: "I am not going to fight, but I am scared of them; they want to beat me up." Appellant frequently had nightmares while living with the Windhams and on occasion would wake up the household "crying and hollering" and, when awakened, would scream: "I seen Ralph (Crimms) coming at me with a knife . . . he was going to kill me"; appellant left the Windham house about eight months before the trial began. Windham posted bond for appellant following his arrest for the killing of Geren; he took appellant back to California, where he lived in the Windham home until the commencement of the trial. The bill of exceptions further showed that Windham said that the appellant "still has nightmares of the tragedy that occurred."

Evidence, to be admissible, must be material or relevant to a contested fact or issue, and the determination of its admissibility is within the sound discretion of the trial court. *Stone v. State,* 574 S.W.2d 85, 89 (Tex.Cr.App.1978).

■ In the case at bar, the exclusion of Windham's testimony, as set out in appellant's bill of exceptions, did not constitute reversible error. None of that testimony was material or relevant to appellant's claim of self-defense, nor was it material or relevant to his asserted "belief" that it was immediately necessary to use deadly force to defend himself. The excluded testimony could not have been germane to any fact issue concerning appellant's guilt or innocence of the offense for which he was charged, nor of any justification for the shooting of Geren.

Finally, appellant complains that the court erred in failing to exclude from consideration by the jury the pistol, marked State's Exhibit 5, which was not admitted into evidence. He argues that by allowing the pistol to be used by the State in a demonstrative manner, it was calculated to inflame and did inflame the prejudices of the jury.

Appellant, in his brief, does not point to any place or places in the record where he made any objections to the demonstrative manner in which the State exhibited the pistol to the jury. Moreover, the pistol used in demonstration by the State's witnesses is the same pistol which appellant, on direct examination, identified as the one which he used to shoot Geren. Furthermore, appellant's counsel during the trial, ordered appellant to use this pistol in demonstration, as follows:

"Q When you shot John how did you shoot him, take the gun and show me how you shot him; ..."

The complaint is without merit. *Johnson v. State,* 604 S.W.2d 128 (Tex.Cr.App.1980); *Williams v. State,* 566 S.W.2d 919 (Tex.Cr. App.1978).

We have carefully examined all grounds of error which have been brought forward by appellant. They are all overruled.

The judgment of the trial court is AFFIRMED.